## McKEEVER, COOK & CO. v. CANONSBURG IRON CO.

APPEALS BY DEFENDANTS FROM THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY.

Argued October 15, 1888—Decided October 29, 1888.
Argued October 20, 1890—Decided November 3, 1890.

(a) By a contract in writing, plaintiffs agreed to supply to defendants "what coal you will require for your mill for three years," at certain prices specified for "forked coal," "run of mines" and "slack." At

Statement of Facts.

the time of the contract, natural gas for use as a fuel was unknown within the county where the mill was situated:

1. Defendants having subsequently introduced natural gas into their mill, thereafter using a less quantity of coal, and that nut coal purchased from another firm, they were liable to the plaintiffs, not for the coal they would have required had they not introduced gas, but only for the coal necessary for consumption after its introduction.

2. Though nut coal was not specifically named as such in the contract, yet, the contract embracing all the coal required, and there being evidence that the nut coal purchased from the other firm took the place of slack, the defendants had no right to make use of it, without liability to the plaintiffs.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and HAND, JJ.

No. 86 October Term 1888, Sup. Ct.; court below, No. 257 February Term 1886, C. P.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 35 October Term 1890, Sup. Ct.; court below, No. 257 February Term 1886, C. P.

On January 28, 1886, assumpsit was brought by McKeever, Cook & Co., for use of J. V. H. Cook, against H. S. Duncan and others, doing business as the Canonsburg Iron Company, Limited.*    The defendants pleaded non-assumpsit.

At the trial on March 1, 1888, the beneficial plaintiff showed that on November 8, 1882, the legal plaintiffs were operating a coal mine at Canonsburg, Washington county, and on that day they entered into a contract in writing with the defendants, operating an iron mill at the same place, which contract was as follows:

"Canonsburg, Pa., November 8th, 1882.
"Canonsburg Iron Co., Limited.
        Canonsburg, Pa.

"Gentlemen: We will agree to supply you with what coal you will require for your mill, for three years time from November first, 1882, at the following prices delivered at your

---

* So brought, because, as alleged, the defendants' statement of organization as a limited partnership, under the act of June 2, 1874, P. L. 271, was defective.

Statement of Facts.

works, you to build the necessary bridge, make and keep the road in good condition during this contract:

Forked coal, $4.10 per 100 bushels.
Run of mines, 3.30 " " "
Slack, 2.00 " " "

"Payment to be made in cash on or before the fifth of each month for previous month's delivery. This price is based on the three-and-a-half cent mining rate, and should same be advanced at any time during this contract, the price of coal will be correspondingly advanced; that is to say, if the mining in the Pittsburgh district should advance half a cent, our price to you will then be as follows:

Forked coal, $4.85 per 100 bushels.
Run of mines, 3.95 " "
Slack, 2.00 " "

"We will use our best efforts to give you your full requirement daily, but not to be held in damages for miners' strikes, or other causes beyond our control. Neither will we require you to receive coal, should your works be out of operation at any time. Should coal not prove satisfactory after thirty days' trial, this contract to be null and void.

"Accepted,                              J. V. H. COOK,
"H. S. DUNCAN,                      Sec. and Treas.
"CHAS. H. TAYLOR,             W. C. MAGEE,"
"Managers Canonsburg Iron Co."

There was testimony given to show that at the date of said contract, natural gas, in sufficient quantity for fuel, had not been discovered in Washington county; that McKeever, Cook & Co. furnished a full supply of coal to defendants under the contract, until in January, 1885, when the defendants put down a gas well upon their own premises and introduced natural gas into their mill; that in May, 1885, the defendants put down a second well and obtained an additional supply of gas for their furnaces; that, although some coal was used by them, occasionally, after January, 1885, yet it was chiefly slack and nut coal; that from April 16, 1863, to the time when the contract expired, the defendants used in their mill 142,100 bushels of slack and nut coal, purchased from Shupe & Co., and that of this amount 55,650 bushels was slack.

Charge of Court below.

At the close of the testimony on both sides, the court, Mc-
Ilvaine, P. J., charged the jury in part as follows :

[Under this contract, Mr. Cook claims that the iron com-
pany was bound to take from the plaintiffs all the coal that
was required and necessary to run the mill during the three
years that the contract was in force.   It being in evidence that
at the time the contract was made by the parties, coal was the
only fuel being used or that was then accessible and suitable
to be used in this mill, we instruct you, as a matter of law,
that this is a proper interpretation and construction of the
terms of this contract.] [4] . . . .

Now, in regard to the points that the counsel have presented,
we will charge as follows : The plaintiffs ask us to charge you :

1. If the jury find from the evidence that there has been a
breach of the contract on the part of the defendants, the proper
measure of damages is the difference between the value of the
coal which the jury may find the defendants would have re-
quired had they complied with their contract, at the contract
price per bushel, and the value of that quantity of coal in place,
with the cost of mining and delivery added.

Answer : Affirmed.

The defendants ask us to charge you as follows :

1. That the acceptance by the defendants of the offer made
by the plaintiffs, to supply the iron company with what coal it
would require for the mill for three years from November 8,
1882, at the prices named, did not bind the defendant company
to use coal during the said term, exclusive of any other fuel.

Answer. Refused.[1]

2. That the acceptance by the defendants of the offer made
by the plaintiffs to supply the iron company with what coal it
would require for its mill for three years from November 8,
1882, did not bind the defendant company to take coal in suf-
ficient quantity to operate its said mill for three years from
November 8, 1882, exclusive of any other fuel.

Answer. Refused.[2]

3. That by the true construction of the writing dated Novem-
ber 8, 1882, the defendant company was not bound to take coal
in sufficient quantity to operate its mill, from the plaintiffs, but
was only bound to take what coal it saw fit to use in its mill
at the prices named.

Opinion of the Court.

Answer. Refused.[3]

—The jury returned a verdict in favor of the plaintiffs for $1,767. Judgment having been entered, the defendants took the appeal to No. 86 October Term 1888, Sup. Ct., assigning for error, inter alia:

1–3. The answers to the defendants' points.[1 to 3]

4. The portion of the charge embraced in [ ] [4]

*Mr. John D. Braden* (with him *Mr. J. W. Donnan* and *Mr. Alvan Donnan*), for the appellants.

*Mr. John L. Gow* (with him *Mr. R. W. Irwin, Mr. E. E. Crumrine* and *Mr. Boyd Crumrine*), for the appellees.

Upon the construction of the contract, counsel cited: Williamson v. McClure, 37 Pa. 402; Rowland v. Leach, 11 Pick. 151; 2 Wharton on Cont., § 674; Aspdin v. Austin, 5 Q. B. 683.

OPINION, MR. CHIEF JUSTICE GORDON:

This case is all wrong, and must be reversed. The following seems to be the contract under which the parties contestant operated:

[Here the contract of November 8, 1882, was copied.]

From this it is obvious, that no limit was, by the contract, put upon the discretion of the defendants as to the amount of coal they were to use in the mill. It might be much, little, or none at all. What *coal* was necessary for consumption in their works they must take from the plaintiffs. This was all they were bound to do, and all the plaintiffs were bound to furnish them; and it was of no consequence whether the falling off in that consumption was occasioned by the contraction of their business, or by the introduction of gas. In either case, less coal was necessary for the defendants' manufactory, and they were not obliged to pay for what they did not require.

The judgment is reversed.

Attention having been called to the fact that the defendants had not taken from McKeever, Cook & Co. " what coal was necessary for consumption in their works," which did not clearly appear as the case was presented in the Supreme Court, a venire facias de novo was subsequently awarded.

Charge of Court below.

At the second trial, on December 13, 1889, a case was made out on the evidence in substance the same as on the former trial, and at the close thereof, the court, McILVAINE, P. J., instructed the jury, answering certain of the points presented as follows :

The plaintiffs ask us to charge you as follows :

1. If the jury find from the evidence that there has been a breach of the contract on the part of the defendants, the proper measure of damages is the difference between the value of the coal which the jury may find the defendants would have required had they complied with their contract, at the contract price per bushel, and the value of that quantity of coal in place, with the cost of mining and delivery added.

Answer : This is affirmed, unless the jury find from the evidence that the coal, which the defendants were bound to take under the contract, was sold or could have been sold in the market by the plaintiffs at their place of business.   If the coal was left in place, and left unsold solely by reason of defendants' breach of contract, then the measure of damages is as stated in this point.

The defendants ask us to charge you as follows :

1. That by the writing upon which this suit is brought, the defendant company was not bound to purchase coal from the plaintiffs, but had the right to obtain its supply of coal wherever it saw proper, and only became liable to pay the plaintiffs, at the rate fixed by the contract, for the coal it afterward ordered to be delivered at its mills, and the verdict of the jury should be for the defendants.

Answer : Refused.[1]

2. That by the true construction of the writing dated November 8, 1882, the defendant company was not bound to take all the coal it used from the plaintiffs, but was only bound to take what coal it saw fit to order, at the prices named ; and no liability arises on the part of the defendant company, except for coal so ordered.

Answer : Refused.[2]

7. That "nut coal" not being specified or contracted for in the writing upon which this suit is brought, the defendant company had the right to purchase this grade of coal whereever it saw proper, without any liability to the plaintiffs for breach of contract.

Opinion of the Court.

Answer: Affirmed, if the jury find under the evidence that nut coal is not included in the kinds of coal specified and contracted for in the writing upon which this suit is brought, and was used for a different purpose.[3]

—The jury returned a verdict for the plaintiffs for $1,494.85. Judgment having been entered, the defendants took the appeal to No. 35 October Term 1890, Sup. Ct., assigning for error:

1–3. The answers to the defendants' points.[1 to 3]

*Mr. John D. Braden* (with him *Mr. J. W. Donnan* and *Mr. Alvan Donnan*), for the appellants.

Counsel cited: Reaney v. Culbertson, 21 Pa. 507; Miller v. Fichthorn, 31 Pa. 252; Adams v. Betz, 1 W. 425; Miller v. Cresson, 5 W. & S. 284; Mitchell v. Insurance Co., 51 Pa. 410.

*Mr. John L. Gow, Mr. R. W. Irwin, Mr. E. E. Crumrine* and *Mr. Boyd Crumrine*, for the appellee, were not heard.

That the court was not bound to answer, without qualification, abstract propositions, or propositions which met but a single view of the evidence when it admitted of another, the brief filed cited: Rider v. Maul, 70 Pa. 15; McKnight v. Ratcliff, 44 Pa. 165; Graham v. Moore, 4 S. & R. 467; Irish v. Smith, 8 S. & R. 573; Hughes v. Boyer, 9 W. 556.

PER CURIAM:

The contract upon which this suit was brought received a construction when the case was here before. It was then said by GORDON, C. J.: "What coal was necessary for consumption in their (Canonsburg Iron Company's) works they must take from the plaintiffs. This is all they were bound to do, and all the plaintiffs were bound to furnish them; and it was of no consequence whether the falling off in the consumption was occasioned by the contraction of their business, or by the introduction of gas. In either case, less coal was necessary for the defendants' manufactory, and they were not obliged to pay for what they did not require." Upon the present trial below the defendants attempted to ignore the above ruling. This clearly appears by their second point, in which the court below was asked to instruct the jury " that, by the true construction

Statement of Facts.

of the writing dated November 8, 1882, the defendant company was not bound to take all the coal it used from the plaintiffs, but was only bound to take what coal it saw fit to order, at the prices named; and no liability arises on the part of the defendant company except for coal so ordered." This instruction the learned judge very properly refused, as it was right in the face of our former ruling. Nor is error perceived in the answer of the court to the defendants' seventh point. See third assignment. This point was affirmed, with a qualification which was justifiable under the circumstances. It is true, nut coal was not specifically named as such in the contract, but said contract called for all the coal used, and there was evidence that nut coal took the place of the slack; in other words, that the slack included nut coal.

Judgment affirmed.

