MARGARET WELLS, Appellant, *v.* FRANCIS ALEXANDRE et al., Respondents.

Plaintiff proposed, in writing, to furnish defendants' steamers, which were making regular trips during the year between certain ports, with coal at a price named for the year 1888, the quantity not being specified; the proposal was accepted. Coal was delivered as needed until June 25th, when defendants sold and ceased to operate their steamers, and declined to receive coal thereafter. The purchaser continued to make regular trips with the steamers as before. In an action to recover damages for breach of the contract, *held,* that it was for the delivery of all the coal required for the operation of the steamers during the entire year and not a contract for successive deliveries of coal to be made only when the defendants should give plaintiff notice that a delivery was required; that the fact that defendants sold the steamers was immaterial, as this did not operate to relieve them from the obligation to take the coal required in the ordinary and accustomed use of the steamers; and so, that plaintiff was entitled to recover.

*Wells* v. *Alexandre* (24 J. & S. 542), reversed.

(Argued October 13, 1891; decided December 1, 1891.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made April 15, 1889, which reversed an interlocutory judgment of the Special Term sustaining a demurrer to one of the defenses set forth in the defendants' answer.

This action was brought to recover damages alleged to have been sustained by plaintiff from a breach of contract by defendants.

The following is the opinion in full:

" The complaint alleges a contract whereby defendants agreed to purchase from the plaintiff, at a specified price, all coal necessary for the use of certain steamships, of which defendants were the owners, during the year 1888.

" The case was determined upon the pleadings, the plaintiff having demurred to the second defense of the answer. This defense set forth the facts in relation to the alleged contract, and the question involving its construction is presented by the demurrer. It appears that on and prior to January fourth, the defendants were the owners and charterers of certain steamships, and were engaged in the business of operating a

steamship line between New York and certain ports in Cuba and Mexico, and that the steamers City of Alexandria, City of Washington and Manhattan formed a part of such line.

"December 31, 1887, the plaintiff addressed the following communication to the defendants:

'Messrs. F. ALEXANDRE & SONS, New York:

'GENTS.— We propose to furnish your steamers, City of Alexandria, City of Washington and Manhattan, with strictly free burning pea, delivered along side Pier 3, North River, for the year 1888, commencing Jan. 1st to Dec. 31st, for the sum of three dollars and five cents per ton. We also agree to furnish any other steamers of your line with same coal and at same price at any time you wish. If, through any cause, we are unable to deliver pea coal, we will deliver you other sizes at an equitable adjustment of price.

'Yours, very respectfully,

'JOS. K. WELLS, *Agt.*'

"To which the defendants on January 4, 1888, replied as follows:

'Mr. Jos. K. WELLS:

'DEAR SIR.— We beg to accept your offer of 31st ult., to furnish our steamers, City of Alexandria, City of Washington and Manhattan, with strictly free burning pea coal, delivered along side Pier 3, North River, for the year 1888, commencing January 1st, for the sum of $3.05 per ton of 2,240 lbs.; also to furnish any other steamer of our line with same coal at same price, if we wish it. If, through any cause, you are unable to deliver pea coal, you will deliver us other sizes at an equitable adjustment of price.

'Yours truly,

'F. ALEXANDRE & SONS.'

"Thereafter, and until the twenty-fifth day of June following, the plaintiff furnished to the defendants such quantities of coal as were required for the use of the steamships named. On that day the defendants sold to the New York and Cuba Steamship Company, all their steamship property, charters and business, including the steamers mentioned in the correspondence, and ceased to operate them. The steamers under the

control and management of the purchaser of June twenty-fifth continued to make regular trips at stated intervals between the same ports as before, and during the remaining portion of the year required and used large quantities of coal. The plaintiff insists that the correspondence created a valid contract by which she became bound to deliver, and the defendants to receive, at the price named, all coal which would be required for the operation of the steamers during 1888, and as the coal required for their use was not received by the defendants after June twenty-fifth, that she is entitled to recover the damages sustained because of the default of the defendants.

" The defendants, on the other hand, contend that the correspondence did not create a contract; that if it did, it was a contract for successive deliveries of coal, to be made only when the defendants should give the plaintiff notice that a delivery was required, and as notice had not been given, the defendants are not in default.

" If in plaintiff's offer the words ' one thousand tons ' had been employed instead of ' your steamers City of Alexandria, City of Washington and Manhattan,' it would not be questioned that the written acceptance of the defendants created a valid contract. The offer and acceptance were unqualified ; the price fixed ; the duration of the contract limited to a period commencing January first, and ending December thirty-first of the same year ; and the quantity would have been certain.

" As it was not possible to determine the precise amount of coal that would be required to operate the steamers during the year, the plaintiff seems to have made his proposition as to amount as definite and certain as the situation permitted. Three of defendants' steamers made regular trips at stated intervals between certain ports and necessarily required and used in so doing large quantities of coal, and in view of that condition the plaintiff offered to ' furnish your steamers City of Alexandria, City of Washington and Manhattan,' with coal for a period of about a year. It is very clear that the language employed by plaintiff in the light of surrounding circumstances was intended to make as definite as possible, the quantity of coal which the defendants would be required to take. The quantity to be measured by the requirements of the three

steamers for the year ensuing in an employment about which they had been long engaged. So, while at the date of the agreement the quantity was indefinite, it was, nevertheless, determinable by its terms and, therefore, certain, within the maxim, *certum est quod certum reddi potest.*

"Defendants urged that if it be conceded that the proposition accepted was to furnish the steamers with coal for the year, at three dollars and five cents per ton, still the undertaking was to furnish coal from time to time when defendants should notify her that deliveries were required, and as no such notice has been given since the last delivery for which payment has been made, the defendants are not in default and no recovery can be had.

"The argument made in support of this proposition briefly stated is, that it is apparent that it could not have been in the contemplation of the parties that the coal should be furnished in one lot, but rather at different times as the steamers required it for their several voyages; nor could the plaintiff know the amount which each steamer would require at the successive loadings. Therefore, the defendants were to determine the time and quantity for each delivery, and as the contract contained no promise to give the plaintiff notice, the defendants were bound to take only such coal as they notified the plaintiff to furnish.

"It may be doubted whether there is anything in the record to warrant a determination that the plaintiff would not know the several amounts and times when coal would be needed, but if it were otherwise, we do not deem it controlling. As we have already said, the evident intention of the parties was that the plaintiff should furnish to the defendants all the coal which the steamers named should require in the work in which they were employed for the year ensuing, and that the parties should perform all needful acts to give effect to the agreement; therefore, if a notice was requisite to its proper execution, a covenant to give such notice will be inferred, for any other construction would make the contract unreasonable and place one of the parties entirely at the mercy of the other. (*Jugla* v. *Trouttet*, 120 N. Y. 21–28; *New Eng. Iron Co.* v. *Gilbert E. R. R. Co.*, 91 id. 153; *Booth* v. *C. R. M. Co.*, 74 id. 15.)

"The fact that the defendants deemed it best to sell the steamers, cannot be permitted to operate to relieve them from the obligation to take the coal which the ordinary and accustomed use of the steamers required, for the provisions of the agreement do not admit of a construction that it was to terminate in the event of a sale or other disposition of them by the defendants.

"The judgment should be reversed."

*Geo. Bethune Adams* for appellant.

*Lewis Cass Ledyard* for respondents.

PARKER, J., reads for reversal.
All concur, except HAIGHT, J., dissenting.
Judgment reversed.