CHARLES F. WIGAND, Appellant, v. BACHMANN-BECHTEL BREWING COMPANY, Respondent.

**Contract — construction of contract for installation and operation of plant in brewery for drying of wet brewery grains — held, that such contract was for a fixed term of years or until a designated amount of wet grains had been dried and sold and that plaintiff may recover from the brewing company the loss caused by the defendant in the sale and discontinuance of its brewing business.**

Plaintiff agreed to install in the beer brewery of defendant a plant for the drying of wet brewery grains; to advance to defendant a certain sum, or so much thereof as necessary; to provide a place in defendant's buildings for the erection of the drying plant; to employ the help and pay the operating expenses of the plant; to pay for the wet grains monthly, at a certain price for each barrel of beer brewed; to insure and keep the plant in repair for five years, and to retain the title to and operate the plant for a period of five years, or until a fixed number of barrels of beer had been brewed, and then transfer the machinery and plant to defendant, and, also, after the expiration of the five years, to purchase from defendant, at the price named in the contract, all the dry grains produced by defendant in such plant. The defendant agreed to prepare a place for the drying plant; to sell the plaintiff all of the wet brewery grains produced from the brewing at its brewery for a period of five years or until an agreed number of barrels of beer should be produced and to allow a certain sum to plaintiff from the amount payable for wet grains every month as part payment of the sum advanced by plaintiff to defendant under the contract until the amount so advanced should be fully paid. After the contract had been performed by both parties for nearly two years, the defendant sold its business and agreed not to operate its brewery for two years, and has never resumed operations. This action is brought to recover damages sustained by plaintiff by reason of the alleged unlawful abandonment of its contract. *Held*, that the defendant was bound under the contract either to continue the brewing of beer in good faith for five years or in the alternative until it had brewed the quantity of beer agreed upon prior to the expiration of that period; that the loss which the plaintiff sustained, as the result of the defendant's failure so to do, is a question for the determination of the jury, and, hence, that part of the judg-

ment of the Appellate Division which dismissed the complaint is erroneous and the judgment should be modified by striking it out and by granting a new trial of the action.

*Wigand* v. *Bachmann-Bechtel Brewing Co.,* 169 App. Div. 285, modified.

(Argued December 11, 1917; decided January 8, 1918.)

APPEAL from a judgment, entered October 4, 1915, upon an order of the Appellate Division of the Supreme Court in the second judicial department, reversing a judgment in favor of plaintiff entered upon a verdict and directing a dismissal of the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Thomas G. Prioleau* for appellant. The contract obligated the defendant to operate its plant and to produce and furnish to the plaintiff its product of wet grains for a period of five years or until 500,000 barrels of beer shall have been brewed. (*Mansfield* v. *N. Y. C. & H. R. R. R. Co.,* 102 N. Y. 205; *Simon* v. *Etgen,* 213 N. Y. 589; *Moran* v. *Standard Oil Co.,* 211 N. Y. 187; *Grossman* v. *Scheuber,* 206 N. Y. 466; *Byrns* v. *United Tel. Co.,* 105 App. Div. 69; *Dermott* v. *State,* 99 N. Y. 101; *Du Pont D. N. Powder Co.* v. *Schlottman,* 218 Fed. Rep. 353; *Booth* v. *Cleveland Mill Co.,* 74 N. Y. 15; *Horton* v. *Clark,* 94 App. Div. 404; *Hearn* v. *Stevens,* 111 App. Div. 101; *Wells* v. *Alexandre,* 130 N. Y. 642; *Wilson* v. *Orguinette Co.,* 170 N. Y. 542.) The defendant, in selling out its entire business, agreeing with the vendee thereof not to engage in business for a period of two years, and suspending without ever thereafter resuming the operation of its brewery, violated the terms of its contract with the plaintiff, and its acts constituted an abandonment of such contract. (*Lewis* v. *Smith,* 9 N. Y. 520; *Wallace* v. *Jones,* 83 App. Div. 152; *People* v. *Elferbein,* 65 Hun, 434; *Penfold* v. *U. L. Ins. Co.,*

85 N. Y. 317; *Paul* v. *Travellers' Ins. Co.*, 112 N. Y. 472; *Wharton* v. *Winch*, 140 N. Y. 287; *Baker* v. *Johnson*, 42 N. Y. 126; *Hickman* v. *Cabot*, 183 Fed. Rep. 747; *Wilson* v. *M. O. Co.*, 170 N. Y. 542; *Stirling* v. *Maitland*, 5 B. & S. 840.) As damages for the defendant's breach of the contract, plaintiff was clearly entitled to recover the probable profits which he would have earned if the contract had been fully performed. (*Hetzel* v. *B. & O. R. R. Co.*, 169 U. S. 37; *Drucker* v. *M. Ry. Co.*, 106 N. Y. 157; *Wakeman* v. *Wheeler & Wilson Mfg. Co.*, 101 N. Y. 205; *Stevens* v. *Amsinck*, 149 App. Div. 229; *Dart* v. *Laimbeer*, 107 N. Y. 664; *Nash* v. *Thousand Island Steamboat Co.*, 123 App. Div. 148; *Meyer Bros.* v. *McKinney*, 137 App. Div. 541.)

*William S. Gordon* for respondent. Under the contract between the parties the appellant was not entitled to recover. (*Pfann & Co.* v. *Cypress Lumber Co.*, 194 Fed. Rep. 69; 225 U. S. 706; *Wemple* v. *Stewart*, 22 Barb. 154; *Merriam* v. *United States*, 14 Ct. Ct. Rep. 289; *Austin* v. *Oakes*, 48 Hun, 492; *Richardson* v. *Richardson*, 114 N. Y. 912.) The provisions contained in the 8th clause of the contract gave the respondent the right to suspend operations of its brewery for any reasons whatsoever. (*Black* v. *D. & R. Canal Co.*, 22 N. J. Eq. 130; *P. C. Mfg. Co.* v. *Hazen*, 118 Mass. 350; *Matter of Cullinan*, 30 Misc. Rep. 641; *Myers* v. *Queensmore*, 53 Fed. Rep. 1022; *Harty* v. *Doyle*, 49 Hun, 410; *Miller* v. *Hannibal*, 90 N. Y. 430; *Heaton* v. *Wright*, 10 How. Pr. 79; *McMurray* v. *Brown*, 1 Otto [U. S.], 257; *Moore* v. *S. T. & L. Ins. Co.*, 168 Fed. Rep. 496; *Matter of Imperial Brewing Co.*, 143 Fed. Rep. 579.) The appellant was erroneously permitted to recover loss of profits, the method adopted for proving profits was improper, and the rule of assessing damages was improperly stated to the jury. (*Stecker* v. *Weaver Coal & Coke Co.*, 116 App. Div. 772; 192 N. Y.

556; *Parsons* v. *Sutton*, 66 N. Y. 92; *Sprout* v. *Newton*, 48 Hun, 209; *Shepman Mtge. & Realty Corp.* v. *Sussman*, 147 App. Div. 25; *Bliss Co.* v. *B. T. C. Co.*, 131 Fed. Rep. 51; *R. L. Co.* v. *S. & P. Press Co.*, 135 N. Y. 209.)

CHASE, J.   The defendant, a corporation engaged in the business of brewing beer, produced as a by-product a large quantity of wet grains of little value. The plaintiff had been for several years engaged in the business of constructing and installing grain drying plants to convert such wet grains into a marketable cattle food. They entered into a contract by which the plaintiff agreed, (a) to install at the defendant's brewery a complete grain drying plant as specifically provided and have it ready for use on or before June 1, 1910; (b) to advance to the defendant $5,000 or so much thereof as may be necessary to provide a suitable place in the defendant's buildings for the erection of the grain drying plant; (c) to employ all the help and do all the work in drying the wet grains; (d) to pay monthly for such wet grains six cents per barrel for each barrel of beer brewed by the defendant; (e) to keep the grain drying plant in perfect repair for five years; (f) to retain title to the machinery erected and constructed for the grain drying plant until the end of five years or until 500,000 barrels of beer had been brewed and then to transfer the title to such machinery and plant to the defendant; (g) to carry $10,000 of insurance on the grain drying plant insuring both himself and the brewing company as their interest may appear, and (h) to purchase of the defendant the dry grains produced by it and pay therefor the price named in the contract for three years after the expiration of the five-year period in which he is to maintain the plant and buy the wet grains.

The defendant by said contract agreed: (1) to prepare the place for the erection of the grain drying plant

without delay; (2) " to sell to the party of the second part (plaintiff) all of the wet brewery grains produced from the brewing at its brewery and to continue so to do for a period of five years from the first day of June, 1910, or until five hundred thousand (500,000) barrels of beer shall have been brewed by the party of the first part (defendant) at the said brewery;" (3) to furnish steam to run the grain drying plant to the extent of two hundred tons of coal per year; (4) to turn over to the plaintiff without costs any sacks in which rice may have been packed when purchased by the defendant; (5) to allow $250 to the plaintiff from the amount payable for wet grains each month as part payment toward the amount advanced by the plaintiff to make the changes in its buildings to receive the grain drying machinery, until the amount so advanced is fully paid.

It was also covenanted therein that, " *Eighth.* Should the party of the first part hereto be prevented from operating its brewery by reason of strikes, break-downs in machinery, or for any reason whether beyond its control or otherwise, then and in that event this contract and the performance thereof by the party of the first part shall stand in abeyance until the brewery of the party of the first part shall again be in operation."

The plaintiff furnished the defendant the money to pay the expense of altering its buildings to receive the grain drying plant and also installed its plant at an expense to him of $6,050. From August 31, 1910, to April 30, 1912, the plaintiff received the wet grains from brewing 158,035 barrels of beer. The parties concededly complied with the contract in every respect until on or about May 1, 1912, when the defendant discontinued the operation of its brewery and sold its entire beer trade, business and property (not including real property and brewing machinery) to another brewing company, and as a part of its contract with such company covenanted

not to operate its brewery for a period of two years. The defendant has never resumed the operation of its brewery. This action is brought to recover damages sustained by the plaintiff by reason of the alleged unlawful abandonment of its contract.

The defendant contends that under the contract it only covenanted to sell to the plaintiff the wet brewery grains *produced* from its brewing at its brewery and that as it has not produced any wet grains since May 1, 1912, it has in no way broken its contract with the plaintiff.

The mutual promises in the contract, many of which we have stated, are such that a voluntary and intentional failure to perform by the defendant would be inequitable and unjust. The large expenditure by the plaintiff for machinery which he placed in the defendant's plant for which pay could only be obtained by him through a continuance of the business; the furnishing by him of $5,000 to the defendant, only to be returned by deductions from the purchase price of the wet grains received; the necessity of expenditures to keep the plant in repair and for insurance as stated for the full period of five years, are important facts to be considered in determining what was meant by the defendant when it promised to sell to the plaintiff " all of the wet brewery grains produced from the brewing at its brewery " as in the contract provided.

Every contract implies good faith and fair dealing between the parties to it. (*Industrial & General Trust, Limited,* v. *Tod,* 180 N. Y. 215; *Brassil* v. *Maryland Casualty Co.,* 210 N. Y. 235; *Simon* v. *Etgen,* 213 N. Y. 589.)

The continuance in good faith of the beer brewing business without a voluntary and intentional discontinuance of the same is inferred not alone from the extent and obligations of the contract, but from the

promissory words, namely, " to sell   *   *   *   all of the wet brewery grains produced from the brewing at its brewery and to *continue so to do* for a period of five (5) years from the first day of June, 1910, or until five hundred thousand (500,000) barrels of beer shall have been brewed."

While the defendant's business was not to manufacture wet grains, the contract should be construed in the light of the fact that the production of such wet grains was made the consideration of a large expenditure by the plaintiff and changed a waste product of the defendant's brewery into a source of revenue to it.

The eighth clause of the contract also implies a covenant by the defendant to continue brewing beer during the term of the contract except when prevented at temporary intervals as therein provided at which time the performance of the contract would " stand in abeyance."

Before it is found that the parties intended to make so one-sided a contract as claimed by the defendant, such intention should appear with sufficient certainty to require such a finding. (*Moran* v. *Standard Oil Co.*, 211 N. Y. 187; *Sanford* v. *Brown Brothers Co.*, 208 N. Y. 90; *Grossman* v. *Schenker*, 206 N. Y. 466; *M'Intyre* v. *Belcher*, 14 C. B. [N. S.] 654.)

The law will sometimes in the absence of express stipulation on the subject infer a contract or promise from one party to the other from the nature of the transaction (*Dermott* v. *State of N. Y.*, 99 N. Y. 101; *Du Pont de Nemours Powder Co.* v. *Schlottman*, 218 Fed. Rep 353.)

The Appellate Division in its decision seems to rely upon the decision in *Wemple* v. *Stewart* (22 Barb. 154). In that case the defendants had agreed to deliver to the plaintiff's assignors 30,000 plank and in addition thereto " all the merchantable plank   *   *   *   (spruce plank of a description mentioned) as they, the defendants,

*might saw* at their mill the ensuing winter." It was held that the obligation extended no further than to require the defendants in case they elected to saw merchantable spruce plank at their mill during the ensuing winter to deliver all such plank so sawed as by the contract provided. The contract in that case was an ordinary agreement to purchase and sell such planks as were sawed by the defendants during a particular winter. The contract did not extend to the special expenditure of money by the parties thereto, the building of a plant, or the maintenance and conduct thereof in connection with such purchase. Neither the decision in that case nor the decision in *Pfann & Co.* v. *Turner Cypress Lumber Co.* (194 Fed. Rep. 69), where the promise was to sell such " lumber as may be manufactured," are controlling upon the case now under consideration.

The plaintiff's complaint should not have been dismissed. We think error was committed by the trial court that required a reversal of its judgment by the Appellate Division and the granting of a new trial. The trial court charged the jury, " That the defendant agreed with the plaintiff that during the course of five years the life of this contract it would give him in that period the wet grain from the brewing of 500,000 barrels of beer." The jury were allowed to compute the plaintiff's damages upon the theory that he was entitled within the five years to the wet grains from the brewing of 500,000 barrels of beer. This was error. The contract only required the defendant to sell, as in the contract provided, the wet brewery grains produced either for a period of five years or until 500,000 barrels of beer had been brewed.

In our judgment the defendant was bound under the contract either to continue the brewing of beer in good faith for five years or in the alternative until it had brewed 500,000 barrels of beer prior to the expiration

of that period.  The loss which the plaintiff sustained under all the circumstances as the natural result of the defendant's failure to deliver to him the quantity of wet grains which he would have received had the defendant in good faith continued brewing beer as contemplated by the contract, is a question for the determination of a jury.

The judgment of the Appellate Division should be modified by striking therefrom that part thereof directing that the complaint be dismissed and by granting a new trial of the action, with costs in this court to abide the event.

HISCOCK, Ch. J., COLLIN, HOGAN, CARDOZO, POUND and ANDREWS, JJ., concur.

Judgment modified, etc.