CHICAGO—FIRST DISTRICT—JUNE, 1920.    363

Chalmers & Williams v. Walter Bledsoe & Co., 218 Ill. App. 363.

## Chalmers & Williams, Appellee, v. Walter Bledsoe & Company, Appellant.

### Gen. No. 24,976.

1. SALES, § 15*—*when contract is valid and binding.* A contract between two parties whereby one agrees to buy and the other to sell all of the former's "consumption requirements" of coal for a period of 2 years and that the former may have an option of renewing the contract for a period of 2 years, is valid and mutually binding upon the parties.

2. SALES, § 15*—*when contract is void for want of mutuality.* If, in a contract between two parties whereby one agrees to buy and the other to sell all of the former's "consumption requirements" of coal for a certain period, the term "requirements" is construed as meaning "needs" and not requiring the former to buy any coal if its plant is shut down or so altered that coal is not needed, the contract is void for want of mutuality.

3. SALES, § 333*—*when contract is breached.* Where by a contract between plaintiff and defendant by which the former agrees to buy and defendant to sell all of plaintiff's "consumption requirements" of coal for a certain period it was the intention of the parties that the amount of coal covered by the contract should be plaintiff's requirements in the ordinary course of its business as established during previous years and existing when the contract was entered into, by abandoning the ordinary course of its business through changing from steam to electricity as a motive power, thus materially reducing its coal requirements, plaintiff breached the contract.

4. APPEAL AND ERROR, § 1306*—*when facts pleaded will be assumed to be true.* On appeal by a defendant whose affidavit of merits was struck from the files on defendant's motion, the facts must be taken to be as set forth in such affidavit.

5. SALES, § 180*—*what is effect of contract for coal to be consumed.* A contract whereby plaintiff agreed to buy and defendant to sell all of plaintiff's "consumption requirements" of coal for a certain period *held,* under the facts recited, to have been entered into with the contemplation and intention of the parties that plaintiff's requirements for coal would continue the same during the life of the contract as they had been established in the years previous to the execution of the contract and would not be

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

diminished by a radical change, such as the substitution by plaintiff of electricity for steam as the motive power in its plant.

TAYLOR, J., dissenting.

Appeal from the Municipal Court of Chicago; the Hon. HUGH J. KEARNS, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1919. Reversed and remanded. Opinion filed June 2, 1920.

LLOYD D. HETH and EDWARD MONSON, for appellant; LLOYD D. HETH, of counsel.

TENNEY, HARDING & SHERMAN, for appellee.

MR. PRESIDING JUSTICE THOMSON delivered the opinion of the court.

The plaintiff, Chalmers & Williams, is a corporation engaged in the manufacture of machinery and the defendant is a corporation engaged in the business of mining and selling coal. The plaintiff brought this action on a contract, under which it was provided that the plaintiff would buy and the defendant sell all of the plaintiff's "consumption requirements" of coal for a period of 2 years, from May 1, 1914 to May 1, 1916, and that the plaintiff might have an option of renewing the contract for an additional period of 2 years, thus extending it to May 1, 1918. In its statement of claim the plaintiff alleged that it had exercised its option and had made demands on the defendant for coal during the period from November, 1916, to April, 1918; that the defendant refused to sell or deliver the coal, as thus demanded; and that the plaintiff was thus obliged to purchase the coal required, on the open market, as a result of which the plaintiff was put to additional cost in the sum of $2,974.24.

In its amended affidavit of merits the defendant set up the following matter by way of defense: (1) It admitted the execution of the contract and the exercise of the option by the plaintiff extending the con-

tract to May 1, 1918. (2) It denied any breach by the defendant and charged a breach by the plaintiff. (3) It alleged that at the time of the execution of the original contract the plaintiff was, and for a long period prior thereto had been, engaged in the manufacture of certain kinds of machinery; that for the purpose of supplying the motive power for the manufacture of such machinery, the plaintiff maintained, and for a long period prior thereto had maintained, a power plant of its own, wherein it generated steam power through the exclusive use of coal; that in order to maintain that power plant throughout the year and also heat its buildings during the winter, the plaintiff had for a number of years required 60 to 70 cars of coal per year in nearly equal monthly instalments of 4 to 6 cars, or approximately 300 tons, throughout the year. (4) It alleged that, as a result of their prior dealings, the defendant knew of the character and magnitude of the plaintiff's coal requirements as above set forth, and that their nature was fully discussed and understood by the parties at the time of the execution of the original contract, and that the contract was executed in contemplation of a continued existence of the known facts and circumstances therein set forth, and in contemplation that the plaintiff would continue to generate its motive power by the exclusive use of coal in its own power plant, in the same way it had in the past. (5) It alleged that some time in the early part of 1916, without its knowledge, the plaintiff discontinued the use of its power plant and entirely abandoned the use of steam as a motive power with which to run its machinery and substituted electrical power in lieu thereof; that ever since that time the plaintiff had not required or used any coal whatsoever for the purpose of generating power but used coal for heating purposes only; that because of said substitution of electrical power for steam, the plaintiff, although often requested by the defend-

ant to take the coal contracted for, neither ordered nor used any coal from April 1, 1916 until October 19, 1916; that because of said substitution of electrical power for steam, the plaintiff used and required, during the period of the contract as extended by the exercise of the option from May 1, 1916 to May 1, 1918, only 38 cars of coal, whereas during the 2 years preceding, from May 1, 1914 to May 1, 1916, the plaintiff used and required 132 cars of coal, and that it had required this in approximately equal monthly instalments throughout that period. (6) It alleged that the defendant did not know of the said substitution of electrical power for steam until on or about October 1, 1916. (7) It alleged that at no time before it acquired the knowledge of the substitution of electrical power for steam did it refuse to sell any coal to the plaintiff. (8) It alleged that ever since it acquired knowledge of the substitution of electrical power for steam the defendant refused to sell the plaintiff any coal under the contract. (9) It alleged that at all times after such substitution the plaintiff continued its business as usual. (10) It admitted that plaintiff bought coal in the open market during the period referred to in the statement of claim and that plaintiff was compelled to pay more for such coal than it would have been obliged to pay for the same coal under the contract but that such additional cost amounted to $2,332.58 and no more. (11) It alleged that by virtue of the facts thus set forth there was no sum due to the plaintiff from the defendant.

On motion of the plaintiff the court struck from the files all of the matter set forth in the amended affidavit of merits except that contained in paragraph 10. The defendant thereupon elected to stand upon its amended affidavit of merits, following which the court found the issues for the plaintiff and assessed its damages in the sum of $2,332.58, from which judgment the defendant has perfected this appeal.

The contract in question was a valid contract, mutually binding upon the respective parties. *National Furnace Co. v. Keystone Mfg. Co.*, 110 Ill. 427; *Minnesota Lumber Co. v. Whitebreast Coal Co.*, 160 Ill. 85; *Fred Allen Automobile Supply Co. v. H. W. Johns-Manville Co.*, 211 App. 217.

The real issue in this case is, did the plaintiff breach the contract when it changed its motive power from steam to electricity and thus reduce its "requirements" for coal from approximately 66 cars a year, distributed nearly equally throughout the year, to approximately 19 cars a year, for use in heating their plant only, in the cold months of the year.

The plaintiff contends that the defendant was the one who broke the contract when it refused to deliver the coal ordered by the plaintiff in the fall of 1916. Apparently plaintiff's contention is that it did not breach the contract when it ceased operating its steam power plant and changed its motive power to electricity. Counsel for plaintiff admit in their brief that plaintiff "was bound to carry out its contract no matter what changes it made in its plant, even if it sold its plant." But it also seems to be plaintiff's contention that the contract would be carried out on its part if it bought of defendant during the contract period, all the coal it "needed" in connection with the operation of its plant. On this theory the contract would be fulfilled on plaintiff's part if all the coal it "needed" during the contract period was (for example) 500 tons a month to be used for heating purposes, although at the time the contract was entered into, its "requirements" were, and for some time had been, 2,000 tons a month, for use in its power plant, as well as for heating purposes, this average monthly requirement running throughout the year. The inconsistency of plaintiff's position is shown by the last phrase of its admission as we have quoted it. It is admitted plaintiff was bound to carry out its contract,

"even if it sold its plant." What interpretation should be placed upon the term "requirements" under this contract in such an event? Certainly not the plaintiff's needs for it would have none at all.

Of course, plaintiff "was bound to carry out its contract," as counsel admit. The question is, what was its contract? It was, to buy its "requirements" in coal, for a given period, from the defendant. What does that mean? If "requirements," as that term is used in this contract, means "needs" in the sense that if plaintiff's plant is shut down or so altered that it needs no coal at all to operate it, then plaintiff is not obliged to order or buy any coal, then the contract must be held void for want of mutuality. But if the "requirements" of plaintiff is to be given such a meaning as will make the contract valid and a mutually binding agreement, then that term must be given the meaning the parties may be shown to have had in mind when they executed the contract. In *National Furnace Co. v. Keystone Mfg. Co.*, 110 Ill. 427, a manufacturer of pig iron contracted to furnish a manufacturer all the pig iron he should need during a given period. In construing this contract, the court said: "It is true that appellee was only bound by the contract to accept of appellant the amount of iron it needed for use in its business; but a reasonable construction must be placed upon this part of the contract, in view of the situation of the parties. Appellee was engaged in a large manufacturing business, necessarily using a large quantity of iron in the transaction of its business. It is not to be presumed that appellee would close its business and need no iron, but, on the contrary, the reasonable presumption would be that the business would be continued, and appellee would, necessarily need the quantity of iron which it had been in the habit of using during the previous years." In *Minnesota Lumber Co. v. White-breast Coal Co.*, 160 Ill. 85, the lumber company made

a contract for its "requirements" of coal for a given period. The court said: "Contracts should be construed in the light of the circumstances surrounding the parties, and of the objects which they evidently had in view. The circumstances, which both parties had in view at the time of making the contract, may be referred to for the purpose of determining the meaning of doubtful expressions. Courts will seek to discover and give effect to the intention of the parties, so that performance of the contract may be enforced according to the sense in which they mutually understood it at the time it was made. * * * The word 'requirements' * * * evidently meant the amount or quantity of coal, which appellant would need in its business for the specified season. * * * The plea avers that defendant was engaged in the purchase, use and sale of coal in its business, and that its requirements therein for that season were very large, and that such facts were well known to the plaintiff (the seller of the coal). The parties will be presumed to have contracted with reference to the knowledge which they then had upon that subject, and upon the supposition that appellant would need the same quantity of coal, which it had theretofore been in the habit of using. The word 'requirements' evidently has the same meaning as the word 'needs.' The amount of coal which was 'required' for the business of that season was the amount of coal which was 'needed' in the business of that season." The court held that the demurrer to the plea should have been overruled.

Plaintiff seems to construe this case to mean that if one who has contracted to buy his "requirements" of coal for a given period, orders and pays for whatever his "needs" are for that period, without any regard to any changes he may make in his business, though they may reduce his "needs" materially, he has fulfilled his contract. The court does not so hold. It clearly construes the term "requirements" as con-

templating that the buyer will continue his business so that his ''needs'' in the way of coal will be ap- proximately the same as they were when the contract was made.

Some of the very cases that plaintiff relies on to sustain its position are such as to show that the use of the term ''requirements,'' in such a contract as is involved here, means the party's needs *''in the regular course of his business.''* *Russell, Burdsall & Ward v. Excelsior Stove & Mfg. Co.,* 120 Ill. App. 23; *Wells v. Alexandre,* 130 N. Y. 642. In the latter case the de- fendants agreed to buy of the plaintiffs their require- ments of coal for certain steamers for the year 1888. During that year they sold the steamers and refused to take any more coal under the contract, claiming they had no further need of it. The court said: ''The fact that the defendants deemed it best to sell the steamers cannot be permitted to operate to relieve them from the obligation to take the coal *which the ordinary and ac- customed use of the steamers required* for the pro- visions of the agreement did not admit of a construc- tion that it was to terminate in the event of a sale or other disposition of them by the defendants.''

In our opinion plaintiff's contention that their theory of the case is supported by *Fred Allen Auto- mobile Supply Co. v. H. W. Johns-Manville Co.,* 211 Ill. App. 217, is not tenable. In that case plaintiff agreed to purchase from defendant within 12 months from the date of their contract all plaintiff's require- ments of Red Seal batteries. The court pointed out that ''the contract contains this significant provision, —that plaintiff will 'devote their best efforts in pro- moting the sale of the same,' meaning the Red Seal batteries in the contract described,'' and held that under that language, the plaintiff ''was to establish its requirements by procuring as many orders for the batteries as it could by the use of its best efforts; no reference to past sales in the previous year was

made; no looking backward but a going forward for one year to sell all the batteries which it could in the exercise of its best efforts.'' In that case the meaning of the term ''requirements'' was set forth in the contract itself and the court held that the language was clear and therefore the intention of the parties could not be determined by evidence *aliunde,* but must be fixed by the language employed in the contract itself.

The matter set up by the defendant in its affidavit of merits was proper and made out a good defense. If the facts were as therein set forth (and we must take them to be such in view of the motion to strike), it was the intention of the parties that if the option was exercised, the plaintiff was bound to buy coal from the defendant at the terms therein specified, and the defendant was bound to sell it to plaintiff at these terms for the further period provided for by the option, the amount of coal covered by the contract to be plaintiff's ''requirements'' in the ordinary course of their business as established during the previous years and existing at the time the option was exercised. That being the case, plaintiff breached the contract when it abandoned the ordinary course of its business by the change from steam to electricity and thus materially reduced its requirements and ceased to buy coal from defendant under the contract, as it was under obligation to do by its terms.

Plaintiff has called our attention to that part of the contract providing that, ''it is understood that this contract is to cover the entire consumptive requirements of the party of the first part (plaintiff), and it is also understood and agreed that should the party of the first part so desire, in the fall of the year to lay aside a pile of coal against any contingencies through the winter, it will be furnished in accordance with the terms of this contract.'' In our opinion there is no merit to plaintiff's contention that this language in the contract negatives the theory that prior deal-

ings or past requirements were in contemplation of the parties as defining the amount of coal covered by the contract.

For the reasons stated, the trial court erred in allowing plaintiff's motion to strike the paragraphs of defendant's amended affidavit of merits referred to and in entering judgment for the plaintiff and therefore the judgment of the municipal court is reversed and the cause is remanded to that court for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

MR. JUSTICE O'CONNOR concurs. MR. JUSTICE TAYLOR dissents.