**In re UNITED CIGAR STORES CO. OF AMERICA.**

**No. 55129.**

District Court, S. D. New York.

Feb. 3, 1934.

Cravath, de Gersdorff, Swaine & Wood, of New York City (Donald C. Swatland, T. T. Cooke, and R. L. Gilpatric, all of New York City, of counsel), for trustee.

Sullivan & Cromwell, of New York City (David W. Peck, Robert S. Gordon, Emmet McCaffery, and William E. Nuessle, all of New York City, of counsel), for claimant.

PATTERSON, District Judge.

The Consolidated Dairy Products Company filed a claim against the bankrupt estate. The trustee moved to expunge the claim, but the referee held the claim valid. The trustee brought the matter here on petition to review.

The claim is based on a "requirements" contract made by the bankrupt with a predecessor of the claimant which will be referred to as Consolidated. The bankrupt owned and operated a chain of retail stores. The contract is dated May 3, 1928. It is a long document and bears the marks of careful draftsmanship. Under it the bankrupt agreed for ten years to buy from the Consolidated all ice cream "required for its stores." The contract contains apt provisions relative to quality, price, and deliveries. By another clause

the Consolidated agreed to sell 15,000 shares of its stock to the bankrupt at $18.50 a share (the stock was then selling on the Stock Exchange at $38 a share), and to give an interest in a certain option on stock of another corporation. The bankrupt was to cause certain subsidiaries similarly to agree to purchase their requirements of ice cream from the Consolidated.

The contract was performed by the bankrupt until August 29, 1932, when it filed a voluntary petition in bankruptcy because of insolvency. It was duly adjudicated bankrupt, and a receiver took possession of its stores and other property. Subsequently the trustee in bankruptcy notified the Consolidated that the contract was not adopted. As a result of the bankruptcy, the bankrupt ceased doing business and has not purchased any ice cream.

The trustee takes the position that the bankrupt lived up to the contract; that its only obligation was to purchase its requirements from the claimant and that it did so as long as it had requirements; that there was no undertaking by it that it would continue in business for ten years; that consequently the cessation of business on bankruptcy was not a breach. The claimant, on the other hand, insists that, although there is no express obligation on the bankrupt's part to stay in business and to have requirements for ten years, such an obligation is to be implied, and that the abandonment of business on bankruptcy was a breach. The sole issue is whether there was an obligation on the bankrupt to have requirements for ten years.

■ Contracts whereby a buyer undertakes to buy his entire requirements of a commodity from a seller, and also contracts whereby a seller agrees to sell his entire output to a buyer, have been a frequent source of litigation. There is no difference in the legal principles applicable to the two types of contracts. At one time the view was taken in some quarters that such agreements were lacking in consideration. The promise was thought illusory because the buyer in a requirements contract might refrain from having requirements or the seller in an output contract might have no output. Bailey v. Austrian, 19 Minn. 535 (Gil. 465); Crane v. C. Crane & Co., 105 F. 869 (C. C. A. 7). Latterly it has been generally recognized that this view is erroneous. The buyer in a requirement contract surrenders his right to buy from any one he pleases. If he has requirements, he is bound to satisfy them through the seller alone. So, too, of the seller in an output contract; he has given up his right to sell at large. In both cases the obligation is a real and not an illusory one. 2 Williston on Sales, § 464; Restatement of Law of Contracts, § 32; Ramey Lumber Co. v. John Schroeder Lumber Co., 237 F. 39 (C. C. A. 7); Texas Co. v. Pensacola Maritime Corporation, 279 F. 19 (C. C. A. 5). In the present case both sides concede the validity of the contract. The question is its interpretation.

■ On the effect of such agreements there are two lines of authorities. The view has been taken that, where the buyer engages to buy from the seller all his requirements of an article for a definite period, the seller agreeing to sell on agreed terms, the subject-matter of the contract is the buyer's actual requirements during the period. If his requirements taper off or altogether cease, either because of a change in his needs or because of a sale or discontinuance of his whole business, there is no default. He did not agree to buy any specific quantity, but only his requirements. No promise to continue to have requirements will be read into the contract. Subterfuges or evasions would doubtless not be tolerated, but the buyer's conduct in good faith determines his requirements. The same effect is given to output contracts; if the seller cuts down his manufacture or even closes up his plant in good faith, he has still performed his undertaking. The weight of authority supports this construction of the ordinary requirements contract and the ordinary output contract. H. M. Pfann & Co. v. J. C. Turner Cypress Lumber Co., 194 F. 69 (C. C. A. 5), certiorari denied in 225 U. S. 706, 32 S. Ct. 838, 56 L. Ed. 1266 (sale of business); Kenan, McKay & Spier v. Yorkville Cotton Oil Co., 260 F. 28 (C. C. A. 4) (closing of plant); Hamlyn & Co. v. Wood & Co., [1891] 2 Q. B. 488 (sale of business); Berk & Co. v. International Explosives Co., 7 Com. Cas. 20 (abandonment of business); Kenan, McKay & Spier v. Home Fertilizer & Cotton Oil Co., 202 Ala. 29, 79 So. 367 (closing of plant); Drake v. Vorse, 52 Iowa, 417, 3 N. W. 465 (abandonment of business); Helena Light & R. Co. v. Northern Pacific R. Co., 57 Mont. 93, 186 P. 702 (closing one of several plants); McKeever v. Canonsburg Iron Co., 138 Pa. 184, 16 A. 97, 20 P. 938 (change from use of coal to use of gas); Kenan, McKay & Spier v. Yorkville Cotton Oil Co., 109 S. C. 462, 96 S. E. 524, 1 A. L. R. 1387 (closing down of plant); Willapa Electric Co. v. S. L. Dennis Construction Co., 168 Wash. 416, 12 P.(2d) 609 (abandonment of

business). This view has the support of Mr. Williston. 2 Williston on Sales, page 1172.

In other cases a stricter view of the buyer's undertaking in a requirements contract has been adopted. There has been read into such a contract an obligation on the part of the buyer to have requirements to substantially the same extent as were his requirements when the contract was made. Wells v. Alexandre, 130 N. Y. 642, 29 N. E. 142, 15 L. R. A. 218 (sale of business); Hickey v. O'Brien, 123 Mich. 611, 82 N. W. 241, 49 L. R. A. 594, 81 Am. St. Rep. 227 (sale of business); Chalmers & Williams v. Walter Bledsoe & Co., 218 Ill. App. 363 (change from use of coal to use of electricity). See, also, Fayette-Kanawha Coal Co. v. Lake & Export Coal Corp., 91 W. Va. 132, 112 S. E. 222, 23 A. L. R. 565. In one or two instances courts have been prompted to take this interpretation by the older and now discarded notion that otherwise the agreement would be a mere option and lacking in mutuality. See Loudenback Fertilizer Co. v. Tennessee Phosphate Co., 121 F. 298, 61 L. R. A. 402 (C. C. A. 6). On principle this view of the ordinary requirements contract and the ordinary output contract is difficult to justify. When a buyer agrees to buy his requirements from a seller, he means his requirements whatever they may be. If the parties had intended that the buyer should be bound to take goods according to his requirements in the past, they would have expressed that intention or would have inserted a specific quantity as the amount to be purchased. If they had intended that the buyer should be obligated to have future requirements, they presumably would have inserted a minimum quantity as is quite usual in contracts of this character (see Wigand v. Bachmann-Bechtel Brewing Co., 222 N. Y. 272, 118 N. E. 618; Louisville Soap Co. v. Taylor, 279 F. 470 (C. C. A. 6), or in some other manner have indicated that the buyer must continue to buy throughout the term. There is another consideration. No case, so far as I know, has gone so far as to hold that the buyer is liable in case his requirements slump off in the course of the contract to one-half, one-third, or one-tenth of his former needs; and yet, if he is not liable in such a case, it is hard to see how he can be held liable where in good faith he ceases business altogether and thereafter has no requirements. The incongruity of this was commented on by the Montana court in Helena Light & R. Co. v. Northern Pacific R. Co., supra. The moment we depart from the plain meaning of the words used and begin to imply conditions and covenants into the contract, we run into perplexing inconsistencies. In Wells v. Alexandre, supra, a case frequently cited, the defendant made a contract to buy from the plaintiff all coal required for his three steamers for one year. In the middle of the year he sold the steamers and thereafter required no coal for them. The plaintiff was allowed to recover; the court viewing the contract as one to take all coal "which the ordinary and accustomed use of the steamers" required for one year. But the New York courts have since recognized that there is more elasticity in the usual requirements contract, and that the buyer is not limited to "the ordinary and accustomed" volume of his supplies; on doubling his business, he may call on the seller to fill his doubled needs. New York Central Iron Works Co. v. United States Radiator Co., 174 N. Y. 331, 66 N. E. 967; Fuller & Co. v. Schrenk, 58 App. Div. 222, 68 N. Y. S. 781, affirmed in 171 N. Y. 671, 64 N. E. 1126. In Edison Electric Illuminating Co. v. Thacher, 229 N. Y. 172, 178, 128 N. E. 124, Judge Crane referred to Wells v. Alexandre as presenting "an exceptional form of contract." In none of the cases that take the minority view has it been held that the buyer in a requirements contract incurs liability on ceasing business altogether because of financial inability to keep going.

On principle and the weight of authority, therefore, it seems clear that, where the buyer makes a contract to purchase his requirements of a commodity for a term, he has not broken his contract when his requirements diminish or when he ceases to have any requirements by reason of retirement from business, voluntary or involuntary. A provision that he shall continue to have requirements is not ordinarily implied.

Other provisions of the requirements contract may be strong enough to indicate an agreement that the buyer was to remain in business and continue to have requirements. Diamond Alkali Co. v. P. C. Tomson & Co., 35 F.(2d) 117 (C. C. A. 3); Wiseman v. Dennis, 156 Va. 431, 157 S. E. 716. See, also, the remarks of Kay, L. J., in Hamlyn & Co. v. Wood & Co., supra, [1891] 2 Q. B. at page 495. The claimant insists that the provision requiring it to sell 15,000 shares of its stock to the bankrupt at a figure which was one-half the market price is such an indication. There is force in the argument. But the transfer of stock, giving the bankrupt an interest in the claimant's business, is not the same as a cash payment. The trans-

fer of stock to the bankrupt was doubtless intended to stimulate the purchase of ice cream by the bankrupt by giving it an interest in the claimant's business. This feature of the contract is not enough to warrant the court in importing into the contract a provision that is not there, that the bankrupt must continue in business for the ten year term. On familiar principles, the implication of such a covenant can be resorted to only in a case so plain that no doubt can exist as to the real intention of the parties. The fact that this agreement was a deliberately prepared document, as is manifest from a reading of it, must not be lost sight of. In the Pfann Case, supra, the contract was one for the seller's output, and the buyer as part of the contract agreed to make a loan to the seller. This circumstance did not render the seller liable for selling his plant before the expiration of the contract and thus terminating his output.

The claimant leans on Central Trust Co. of Illinois v. Chicago Auditorium Ass'n, 240 U. S. 581, 36 S. Ct. 412, 60 L. Ed. 811, L. R. A. 1917B, 580. That case has no application. If the bankruptcy here caused the bankrupt to break its contract, no one doubts that there would be a claim provable in bankruptcy. The question here is whether there was any breach of contract.

It is not intimated that the bankruptcy was not in good faith, nor is it suggested that a desire to escape from obligations under the contract with the claimant prompted the filing of the petition in bankruptcy.

I am of opinion that the bankrupt performed its contract with the claimant, and that the latter has no claim for damages. The order of the referee will accordingly be reversed.