## In re UNITED CIGAR STORES CO. OF AMERICA. *

## In re RETAIL CHEMISTS' CORPORATION.

### Nos. 467, 468.

Circuit Court of Appeals, Second Circuit.

Aug. 10, 1934.

Sullivan & Cromwell, of New York City (David W. Peck, of New York City, of counsel), for appellant.

Cravath, de Gersdorff, Swaine & Wood, of New York City (Wm. D. Whitney, R. L. Gilpatric, and E. V. Huggins, all of New York City, of counsel), for Irving Trust Co., trustee in bankruptcy for United Cigar Stores.

Root, Clark, Buckner & Ballantine, of New York City (William P. Palmer, H. H. Breland, and Leslie H. Arps, all of New York City, of counsel), for Irving Trust Co., trustee in bankruptcy for Retail Chemists' Corporation.

Before MANTON, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

On May 3, 1928, the predecessor of the claimant, to be called hereafter Consolidated, entered into a contract with United Cigar Stores Company of America, herein called merely United, which provided that United would purchase for the term of ten years from June 1, 1928 " * * * exclusively from Consolidated for all of its stores in whatever territory of the United States Consolidated is able to supply, all the ice cream and other frozen products required for its stores. * * * " United was to use its

* Writ of certiorari denied Consolidated Dairy Products Co. v. Irving Trust Co., 55 S. Ct. 210, 79 L. Ed.

best efforts to cause Happiness Candy Stores, Inc., the Mirror, United Retail Stores Corporation, and the Whelan Drug Stores, Inc., to purchase their requirements of such products from Consolidated, upon the same terms and conditions the United's requirements were to be supplied and which need not now be set forth in detail, whenever Consolidated was able to supply such products. With certain provisos, Consolidated agreed to purchase from Happiness Candy Stores, Inc., its requirements of chocolate liquors used in the manufacture of the ice cream furnished under the contract. United agreed to and did buy of Consolidated 15,000 shares of the latter's capital stock at $18.50 per share. The price United paid for this stock was substantially less than that at which it was then listed on the exchange. Consolidated also gave United an interest in an option to buy stock in another corporation.

In June, 1931, Consolidated assigned the contract to the claimant. At that time National Dairy Products Corporation, of which claimant was a subsidiary, guaranteed performance by the claimant. United consented to the assignment, waived all prior defaults and additional refunds, consented to pay for ice cream at a flat rate, and undertook to hold Consolidated and National Dairy Products Corporation harmless in a pending lawsuit. Without other consideration, National Dairy Products Corporation then transferred 2,014 shares of its capital stock to United.

The contract was performed to the satisfaction of the parties until United filed a voluntary petition in bankruptcy in the Southern district of New York on August 29, 1932, and ceased making purchases of Consolidated because it had become disabled by bankruptcy from further performance under the contract. Consolidated then filed its claim in the bankruptcy proceedings based on United's alleged breach of the contract. The appellee moved to expunge. The referee denied the motion, and on review the District Judge reversed the referee and ordered the claim expunged. The appeal of Consolidated from this order is the first question presented.

On May 9, 1928, United Retail Chemists' Corporation agreed with Consolidated as follows:

"In consideration of your agreeing to sell us ice cream upon the same terms and conditions under which you have agreed to sell ice cream to the United Cigar Stores Company of America, as contained in the agreement between you and the United Cigar Stores Company of America dated May 3rd, 1928, we hereby agree to purchase from you our requirements for ice cream, upon the same terms and conditions. *   *   *"

This agreement was satisfactorily performed by the parties until Retail Chemists' Corporation became unable to perform because it was adjudicated a bankrupt in the District Court for the Southern District of New York on July 27, 1932. It then ceased purchases under the contract, and the claimant filed its claim in the bankruptcy proceedings based on this alleged breach. Upon motion, the referee expunged the claim, and his action was sustained on review by the District Judge. The claimant's appeal from such order of the District Court is the second question presented.

It will be convenient to deal first with the claim against United. Although there was formerly some uncertainty as to the validity of what is called a requirements contract, no contention has here been based on that alone. That such contracts are not invalid as a class satisfactorily appears from United States v. Purcell Envelope Co., 249 U. S. 313, 39 S. Ct. 300, 63 L. Ed. 620, Thomas A. Edison, Inc., v. Blackman Distributing Co. (C. C. A.) 66 F.(2d) 722, and Manhattan Oil Co. v. Richardson Lubricating Co. (C. C. A.) 113 F. 923. The problem is to determine what the contract means.

As a matter of law, the bankruptcy of one of the parties to an executory contract does not excuse his performance and, with exceptions not here relevant (see Manhattan Properties, Inc., v. Irving Trust Co., 291 U. S. 320, 54 S. Ct. 385, 78 L. Ed. 824), a claim based on nonperformance because of bankruptcy is provable against the bankrupt estate (Central Trust Company of Illinois v. Chicago Auditorium Association, 240 U. S. 581, 36 S. Ct. 412, 60 L. Ed. 811, L. R. A. 1917B, 580). But provability in bankruptcy is not the issue here, or at least is only a contingent one, for the primary question is whether there has been any breach of the contract at all. Though bankruptcy may not excuse a breach, it may have so changed the buyer's requirements that this contract was not broken. When parties contract with reference either to the requirements of the buyer or the output of the seller, there is necessarily a degree of uncertainty in amount. The very circumstances which make it impossible for the parties to know definitely when the contract is made how much it will cover makes it necessary for each of them to assume the risk of future events, beyond the control of either when acting in good faith, which may

vary the quantity of the subject-matter. The proper division of this risk and the limits to which it may go has led courts to entertain divergent views. In some cases emphasis has been placed upon a supposedly implied obligation of the buyer to continue to have requirements in substantially the same amount throughout the contract period (Chalmers & Williams v. Walter Bledsoe & Co., 218 Ill. App. 363), or at least to continue in business for that period and have all the requirements resulting from such continuance [Hickey v. O'Brien, 123 Mich. 611, 82 N. W. 241, 49 L. R. A. 594, 81 Am. St. Rep. 227; Diamond Alkali Co. v. P. C. Tomson & Co. (C. C. A.) 35 F.(2d) 117; Great Lakes & St. L. T. Co. v. Scranton Coal Co. (C. C. A.) 239 F. 603]. Wells v. Alexandre, 130 N. Y. 642, 29 N. E. 142, 15 L. R. A. 218, is often cited to this effect though it really involved the purchase and sale of an amount of coal which was to be measured not by the requirements of the buyer but by the requirements of certain named steamers. Although the defendant sold the steamers, they continued to have requirements which were held to fix the amount of coal the defendant had agreed to buy. And in Thomas A. Edison, Inc., v. Blackman Distributing Co., supra, the buyer's requirements continued, and the seller sought in vain to excuse its nonperformance on the ground of a discontinuance of part of its own business.

■ There are many decisions to the effect that the obligation on the part of a buyer in a requirements contract to continue to have requirements without substantial variance is not to be implied more strictly than to impose upon him the obligation to act in good faith. He is bound to buy from the seller to the extent that he may have requirements when he is left free to deal with his business as he may deem best, provided his conduct is bona fide. In this respect there is no difference in principle between what is called a requirements contract and an output contract. Illustrative cases are Brawley v. United States, 96 U. S. 168, 24 L. Ed. 622; H. M. Pfann & Co. v. J. C. Turner Cypress Lumber Co. (C. C. A.) 194 F. 69; Berk & Co. v. International Explosives Co. (1901) 7 Com. Cas. 20; McKeever v. Cannonsburg Iron Co., 138 Pa. 184, 16 A. 97, 20 A. 938; Willapa Electric Co. v. S. L. Dennis Construction Co., 168 Wash. 416, 12 P.(2d) 609; Cragin Products Co. v. Fitch (C. C.) 6 F.(2d) 557; Kenan, McKay & Spier v. Yorkville Cotton Oil Co. (C. C. A.) 260 F. 28. See, also, Williston on Sales, vol. 2, § 464.

The weight of authority is in accord with the decision in Brawley v. United States, supra, where it was held that, though in a contract for the purchase of what wood an army post would require for a year the amount was stated to be 880 cords more or less, actual requirements of the buyer, even though only 40 cords, determined the contract amount in the absence of bad faith. So too the bona fide increased needs of the buyer are to be supplied by the seller. New York Central Iron Works Co. v. United States Radiator Co., 174 N. Y. 331, 66 N. E. 967. Since requirements of the buyer may decrease or increase as business conditions fluctuate and be met by the inherent elasticity of a requirements contract, provided the conduct of the buyer is bona fide, there can be no rational distinction between decreases stopping short of total extinction and those which do not. See Helena Light & Ry. Co. v. Northern Pacific Ry. Co., 57 Mont. 93, 186 P. 702.

■ There is no claim here that United became bankrupt in order to evade any obligations under this contract. Its good faith in respect to the contract is unquestioned. That being so, there has been no breach, and the claim was properly expunged.

In the matter of Retail Chemists' Corporation, the principles above alluded to justify the order expunging the claim, and we need not go into certain special phases which the trustee has argued make added weight in favor of the validity of the order made in that matter. Nor has it been necessary to put anything upon the contention made in both cases that the obligation of Consolidated was only to supply requirements within its ability and so was merely illusory. However, see Willard, Sutherland & Co. v. United States, 262 U. S. 489, 43 S. Ct. 592, 67 L. Ed. 1086.

Orders affirmed.