## WILLIAM C. ATWATER & CO., Inc., v. TERMINAL COAL CORPORATION.

### No. 3621.

Circuit Court of Appeals, First Circuit.

Dec. 3, 1940.

Charles J. Miller, of Boston, Mass., for appellant.

C. Frank Reavis, of New York City (Warran, Garfield, Whiteside & Lamson, John Noble, Jr., and David Stoneman, all of Boston, Mass., and Hodges, Reavis, Pantaleoni & Downey and Martin D. Jacobs, all of New York City, on the brief), for appellee.

Before MAGRUDER and MAHONEY, Circuit Judges, and McLELLAN, District Judge.

PER CURIAM.

In a suit for breach of contract to buy coal, the District Court, after a trial without a jury, gave judgment for the defendant. The judgment must be affirmed for the reasons fully and adequately set forth in the opinion of the District Court, 32 F. Supp. 178.

■ Considering the wording of the contract, the circumstances of its execution, and the subsequent conduct of the parties, we think the court below was correct in concluding that the contract required the defendant to buy, not a definite tonnage, but its requirements during the year not to exceed 150,000 tons. Defendant took some coal under the contract, but before the period of the contract had expired sold out its assets and good will to the Carter Coal Company and informed the plaintiff that it had no further requirements.

■ It was found as a fact, upon ample evidence, that the likelihood of defendant's selling out its business during the year was in the contemplation of both parties when the contract was being negotiated; and that was why the buyer was unwilling to commit itself to take a definite tonnage. Therefore it would not be appropriate in this case to read into the contract an implied obligation on defendant's part to continue in business in the usual manner; though in other circumstances and in contracts differently phrased, such an implication might be warranted. Requirements contracts cannot all be lumped together in a single category and given an identical legal effect. See Williston on Contracts, Rev.Ed., § 104A.

■ The law of New York is conceded by both parties to be controlling here, but we do not doubt that the state courts in New York would have reached the same conclusion as did the court below on the facts in the case at bar. See Petroleum Freight Lines Corp. v. Better Gas & Oil Co., 157 Misc. 1, 282 N.Y.S. 671; In re United Cigar Stores Co., D.C., 8 F.Supp. 243, affirmed, 2 Cir., 72 F.2d 673. Wells v. Alexandre, 130 N.Y. 642, 29 N.E. 142, 15 L.R.A. 218, the main reliance of the plaintiff, presented an "exceptional form of contract." Edison Electric Illuminating Co. v. Thacher, 229 N.Y. 172, 178, 128 N.E. 124, 126. The case is explained in Re United Cigar Stores Co., 2 Cir., 72 F.2d 673, 675. No doubt an obligation of good faith is implied. New York Central Iron Works Co. v. United States Radiator Co., 174 N.Y. 331, 335, 66 N.E. 967. As to this, the District Court was warranted in finding, and did find, that the sale of the defendant's business was not made to defeat the plaintiff's right under the contract in suit, but was made in absolute good faith and for the purpose of preventing further financial losses by the defendant in a losing business.

■ When the defendant sold out its business to the Carter Coal Company it had on hand certain executory contracts for the resale of coal to its various customers. It appears that these contracts could have been fulfilled in large part by a delivery of the types of coal specified in defendant's requirements contract with the plaintiff. Since defendant's business did not involve the consumption of coal, but rather the sale of coal, its "requirements" for the year would accordingly mean the tonnage needed by it to supply its customers. The existence of these executory contracts was evidence of potential requirements. However, there was no evidence that there were any tonnages due and undelivered under these contracts on the date of the sale of defendant's business to the Carter Coal Company.

■■ It is true that despite defendant's assignment to the Carter Coal Company of its rights under these executory contracts, defendant's obligations to its customers thereunder remained in effect. In one sense, therefore, defendant still had "requirements"; it satisfied these requirements and procured the performance of its obligations to its customers by having the Carter Coal Company deliver the tonnages contracted for.[1]

■ But the word "requirements" as used in the contract now before us is not a word of art. The most that plaintiff can maintain is that the word is ambiguous; in

---

[1] While the mere assignment of an executory contract, without more, may not under the New York law warrant the implication of a promise by the assignee to assume the performance of the assignor's duties (Langel v. Betz, 250 N.Y. 159, 164 N.E. 890), such an undertaking by the assignee would be implied under the facts and circumstances of the present case, where the defendant sold out its entire business and good will and agreed to close its office. Even if this were not so, Carter Coal Company at least acquired an option to perform the executory contracts on its own account.

which case it is permissible to arrive at the intention of the parties by reference to parol evidence. While the contract was being negotiated, defendant's vice-president reminded the plaintiff that defendant's business was for sale and that a buyer would not want to take it over with a contract for definite tonnages. Such a buyer in taking an assignment of any executory contracts with the seller's customers would naturally desire to fill them from its own product, as Mr. Atwater admitted was to be expected. Under the circumstances, the District Court was right in concluding in effect that when the executory contracts with defendant's customers were assigned, they ceased to be requirements of the defendant and became requirements of the assignee. In other words, "requirements" as used in the contract sued on, means the defendant's requirements of coal needed to make deliveries to customers on its own account. It may be that, if the Carter Coal Company as assignee of the business had defaulted in making deliveries and defendant had therefore needed coal to fulfill its contracts with customers, such coal would have been "requirements" and would have had to be obtained from the plaintiff. This need not be decided for there is no evidence that any such default occurred.

The judgment of the District Court is affirmed, with costs to the Terminal Coal Corporation.