### KAMM v. PRITCHARD et al.

(Circuit Court of Appeals, Fifth District. January 8, 1924.)

No. 4092.

1. Contracts ⬅️10(4)—Contract by defendants to ship all lumber made by their mills to plaintiff for sale as agent held not lacking in mutuality.

A contract between defendants, owners of timber and mills, and plaintiff, for the manufacture of the timber into lumber, by which defendants agreed to ship to plaintiff, or on his order, for sale, all the product of its mills, except such as should be sold to local consumers, until a certain tract of timber should be fully manufactured, and by which plaintiff agreed to "handle all such lumber as hereinafter provided," followed by provisions in detail for sale of the lumber, advances by plaintiff, expenses, commissions, and accounting, *held* not void for want of mutuality, and a petition alleging that before its expiration defendants had sold their timber and mills and refused further to perform, states a cause of action for breach.

2. Contracts ⬅️9(2)—Held not void for uncertainty.

A contract between defendant, owner of timber and mills, and plaintiff, for the manufacture of the timber into lumber, *held* not lacking in requisite certainty.

3. Pleading ⬅️193(1)—Demurrer held not effective to evoke decision as to amount of damages recoverable.

A demurrer to a petition in an action for breach of contract, on the ground that it does not show any basis for computation of recoverable damages, is not effective to evoke a decision as to the amount of damages recoverable.

In Error to the District Court of the United States for the Northern District of Mississippi; Edwin R. Holmes, Judge.

Action at law by Robert Kamm, doing business as the Robert Kamm Lumber Company, against H. W. Pritchard and R. F. Pritchard, doing business as Pritchard Bros. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

George C. Paine and Thos. Fite Paine, both of Aberdeen, Miss., and Charlton A. Alexander and F. M. Curlee, both of St. Louis, Mo., for plaintiff in error.

R. E. Wilbourn, of Meridian, Miss. (Sturdivant, Owen & Garnett, of Columbus, Miss., and Baskin & Wilbourn, of Meridian, Miss., on the brief), for defendants in error.

Before WALKER and BRYAN, Circuit Judges, and GRUBB, District Judge.

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

WALKER, Circuit Judge. The plaintiff in error, Robert Kamm, brought this action to recover damages for the alleged breach of a written contract between him and the defendants in error, of which, except the signatures, the following is a copy:

"This agreement, made and entered into this 21st day of August, 1916, by and between Robert Kamm, of St. Louis, Missouri, doing business as the Robert Kamm Lumber Company (hereinafter called the company), and H. W. Pritchard and R. F. Pritchard, of Lowndes county, Mississippi, copartners doing business as Pritchard Bros. (hereinafter called Pritchard ,Bros.), witnesseth that:

"Whereas, Pritchard Bros. have acquired certain timber located on certain lands in Webster county, Mississippi, which timber and lands are more particularly described by section numbers and fractions in a deed of trust, executed by Pritchard Bros. to the company on this date, reference to which is here made for a description of said timber and lands, which timber is hereinafter referred to as, the McCullough timber; and

"Whereas, Pritchard Bros. are now the owners of certain other timber and timber rights; and

"Whereas, the parties hereto desire that the company shall handle the entire output of all saw and planing mills of Pritchard Bros.:

"Now, therefore, in consideration of the premises, and of the conditions and stipulations hereinafter contained, the parties hereto have agreed as follows:

"First. Pritchard Bros. agree to ship to the company all of the lumber manufactured or produced by or for them (except such lumber as they may sell to local consumers) during the continuance of this contract, shipping either on orders furnished by the company, or, in the absence of such orders, placing the lumber in transit, and the company agrees to handle all such lumber as hereinafter provided.

"Second. Pritchard Bros. agree to operate their mills to capacity, except when prevented by inclement weather, breakdowns, or other conditions beyond their control, manufacturing all stock in a skillful and workmanlike manner, placing the same on sticks for drying.

"Third. Pritchard Bros. agree to deliver all of said lumber on board cars at the railroad as rapidly as possible, and continue so to do so long as this contract may remain in force, as orders are placed by the company, or as transit shipment may be directed by the company.

"Fourth. Pritchard Bros. agree to forward to the company, at least once a month, a stock list, showing all material on hand, and the quantity thereof, in shipping condition.

"Fifth. It is agreed that the rules of the Southern Pine Association shall govern all matters of grades, patterns, etc., except on special orders, and the estimated weights of said association shall be used in estimating freights on shipments at the time of advance. All questions of grades and quantity shall be settled on the basis of the condition of all shipments on arrival at final destination. The company shall use reasonable diligence to get proper settlements and adjustments of all disputes, and shall settle with Pritchard Bros. on the basis of the grades and quantities on which the company settled with its vendees.

"Sixth. Pritchard Bros. agree to pay the company ten (10) per cent. of the net selling price of all the lumber handled under this contract, in full compensation for all services rendered hereunder, and to allow also the customary trade discount of two (2) per cent., the net selling price to be the gross price secured by the company, less freight, shortages, and grade allowances.

"Seventh. The company agrees to advance to Pritchard Bros. eighty (80) per cent. of the selling price of all shipments on orders, and eighty (80) per cent. of the estimated selling price of all transit shipments, after deducting the estimated freight and commission, upon receipt of invoices and bills of lading, and to remit the remainder of the net price of each shipment, less claims as to shortages, grades, freight, and commission adjustments to Pritchard Bros., on receipt of expense bill and settlement with the customer. So long as Pritchard Bros. are indebted to the company, the company, in addition to the foregoing deductions, shall also deduct from remittances to Pritchard Bros.

the sum of twenty-five dollars ($25.00) on each car, and apply the same on any indebtedness of Pritchard Bros. to the company. Interest on all indebtedness of Pritchard Bros. to the company shall be computed monthly at the rate of eight (8) per cent. per annum.

"Eighth. The company agrees to stand all credit losses and expenses of sales and collections.

"Ninth. Pritchard Bros. do hereby grant to the company a lien upon all lumber now owned or hereafter owned by them, or produced by or for them, to secure the repayment of any and all loans and advances made to them by the company.

"Tenth. Pritchard Bros. agree to cut and convert into lumber, as expeditiously as possible, all of the McCullough timber, and this contract shall exist until all of the McCullough timber is cut and converted into lumber and disposed of in accordance with the provisions of this contract, provided that, if any of the parties to this contract shall die prior to such time, this contract shall be terminated as though the McCullough timber were exhausted.

"Eleventh. Pritchard Bros. agree that if, during the existence of this contract, they acquire any other timber or timber rights, the same shall come within the terms of this contract in all respects, as is provided with reference to the McCullough timber, and, where reference is made in the preceding paragraph to the McCullough timber, it shall be held to include such other acquired timber.

"Twelfth. Pritchard Bros. agree that they, or either of them, will not, during the existence of this contract, produce, or have produced for them, or either of them, any lumber not contemplated by this contract, or have any interest in any firm or corporation producing such lumber.

"This agreement is executed to correct and make more definite and certain an agreement executed by the parties hereto on the 1st day of December, 1915, and is executed nunc pro tunc as of that date."

The petition contained allegations to the following effect: The parties to the contract (herein referred to by their designations in the court below) operated thereunder for about two years, until on or about November 12, 1918, when defendants notified plaintiff that they had sold their mills, logging railway, tools, and appliances, and all tracts of timber and timber rights, including the "McCullough timber" mentioned in contract, and that they would make no more shipments under the contract. Thereafter defendants failed and refused to proceed further under the contract. When the contract was so breached, there remained standing on the "McCullough tract" in excess of 12,000,000 feet of merchantable timber. Plaintiff has performed all obligations imposed upon him by the contract, and at all times has been able, ready, and willing to continue to perform his obligations thereunder. The defendants demurred to the declaration on grounds including the following: That the contract sued on is void for uncertainty; that the contract sued on is void for want of mutuality; that said alleged contract is void, as being what is termed a will, wish, or want contract, in that it relates only to such lumber, manufactured for or by the defendants out of the McCullough or other timber during the time necessary to cut the McCullough timber, unless sooner terminated by death, as defendants might not, in the exercise of their own unrestricted will or wish, dispose of to others, to wit, local consumers; that the averments of the declaration do not show any basis for the computation of recoverable damages. The demurrer was sustained. That action of the court is assigned as error.

[1] By its terms the contract was to remain in force "until all of the McCullough timber" on identified land "is cut and converted into

lumber and disposed of in accordance with the provisions of this contract," and defendants agreed to cut that timber and convert it into lumber as expeditiously as possible. The contract was not lacking in mutuality, on the ground that the plaintiff did not obligate himself to handle all lumber furnished by defendants during the continuance of the contract. The first numbered clause of the contract is explicit to the effect that the plaintiff so bound himself. The concluding words of that clause, "as hereinafter provided," relate only to the method of handling, and cannot properly be given the effect of making plaintiff's obligation less than one to handle all lumber furnished by the defendants; the latter, on their part, obligating themselves to ship on orders furnished by plaintiff, or, in the absence of such orders, to place in transit all lumber manufactured or produced by or for them during the continuance of the contract, except such lumber as they may sell to local consumers. The obligation imposed on the plaintiff by the just mentioned provision was not lessened by anything contained in the third or any other clause of the contract. The exception of "such lumber as they may sell to local consumers" did not entitle the defendants to withhold from the plaintiff any lumber produced by or for them, except what they actually sold to local consumers. The extent to which that provision relieved the defendants of their obligation to furnish lumber to the plaintiff was capable of being shown by evidence. In the absence of allegation or proof on the subject, it is not to be presumed that all the lumber that would have been produced by or for the defendants, if they had continued performance, would or could have been actually sold by them, not to dealers, but to consumers in the locality of the place or places of production.

[2] The language of the contract sufficiently shows that an effect of it was to make the plaintiff a lumber selling agent for the defendants; the word "handle" being used in such connection as to indicate that it referred to the activities of such an agent. In the absence of any stipulation as to prices the plaintiff was obligated to sell at prices obtainable by the exercise of good faith and reasonable diligence. On no ground urged was the contract lacking in requisite certainty.

[3] The averments of the petition sufficiently show that at the time it was filed plaintiff had sustained recoverable damages in consequence of the alleged breach of the contract by the defendants. The demurrer was not effective to evoke a decision as to the amount of damages recoverable by the plaintiff. We conclude that the above-mentioned ruling was erroneous. Because of that error the judgment is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed.