**TEXAS INDUSTRIES, Inc., Appellant,**

v.

**R. P. BROWN et al., Appellees.**

No. 15090.

United States Court of Appeals,
Fifth Circuit.

Jan. 20, 1955.

Rehearing Denied Feb. 24, 1955.

Stanley E. Neely and Maurice E. Purnell, Dallas, Tex., Locke, Locke & Purnell, Dallas, Tex., for appellant.

Gaynor Kendall and Henry H. Brooks, Austin, Tex., Leroy A. Howard, Lubbock, Tex., Royal H. Brin, Jr., W. B. Harrell, Morris Harrell, Dallas, Tex., Strasburger, Price, Kelton, Miller & Martin, Dallas, Tex., of counsel, for appellees.

Before HUTCHESON, Chief Judge, HOLMES, Circuit Judge, and ALLRED, District Judge.

HOLMES, Circuit Judge.

This is an action for damages by appellant against the appellees for the anticipatory breach of a contract and for the inducement of said breach. The contract was for the sale by appellant of lightweight aggregate for use in three manufacturing plants that make concrete masonry units. The suit was brought against two groups of defendants, all of whom are appellees here. The first group consists of those who operated the three plants at the time of making the contract; the second group consists of those who subsequently leased and operated the three plants while 44 months of the term of the contract still remained. As to the latter, the complaint alleged that they became bound by the contract, directly breached it, and participated with the first group in the breach thereof; or, in any event, that they induced the breach so as to become liable ex delicto as well as ex contractu. As to all the appellees, it was alleged that they deliberately arranged the transfer of the plants, pursuant to a scheme to deprive the appellant of its benefits.

A copy of the contract, dated December 13, 1951, is set forth in full as an exhibit to the complaint. By its terms the buyers, that is, the first group of appellees, agreed to purchase from the appellant at its plant at Eastland, Texas, all of the lightweight aggregate which said group and their successors and assigns should thereafter require for a period of five years. Aggregate is a material used by so-called block plants in the manufacture of lightweight concrete masonry units, which are used in buildings. The buyers owned and operated three block plants, one in Lubbock, another in Abilene, and a third in Midland, Texas, which were in the vicinity of appellant's Eastland plant. The contract was made in Texas, and was to be performed in that state. It is governed by the law of Texas. Because appellant's production at Eastland was already committed to other customers, it was necessary for appellant to build a new aggregate plant, from which those customers might be served, in order to release the Eastland production for the three block plants. This the appellant did, as contemplated by the contracting parties, at a cost of more than $500,000, in order to place appellant in a position to perform its obligations under the contract, which was to furnish the lightweight aggregate that the buyers had agreed to purchase.

The contracting parties operated under the contract for approximately fifteen months, when the breach in question occurred by the refusal of the buyers to accept further deliveries under the contract. Some claim is made that such refusal may have been justified on the ground of the defective quality of the aggregate, but the testimony on that subject is conflicting and, since the case was disposed of in the trial court on a motion for summary judgment, it must be taken as admitted on this appeal that the aggregate was sufficient in quality and that no defense exists on that score. Also, some claim is made that appellant's damages are not sufficiently proven or provable, but here again the evidence is conflicting, and it must be assumed that

the requisite proof of damage exists for sustaining the cause of action as alleged. The only question for decision on this appeal, as to the first group of appellees, is whether they were released from further performance by their leasing of the three plants to the second group while the contract was still in effect. The only question for decision as to the second group is whether they became obligated under the contract or became liable as participants in the breach. More precisely, the questions are whether any substantial evidence exists that the first group did not avoid their obligation by the leasing arrangement, and that the second group did become obligated by the same transaction, and did become liable as participants in the breach.

Numerous depositions were taken in the case, which was on the jury docket and set for trial on a definite day. A motion to dismiss the complaint, based upon the illegality of the contract under the anti-trust laws of Texas, Vernon's Ann.Civ.St.Tex. art. 7426 et seq., Vernon's Ann.P.C.Tex. art. 1632 et seq., had previously been overruled. Then, prior to the trial date, the district court (having notified counsel) re-heard and sustained motions for a summary judgment. The court had before it the pleadings and the depositions. The first group of defendants based their motion solely upon the contention that their obligation under the contract was extinguished by the leasing arrangement. The second group based their motion upon the fact that they were not signatory parties to the contract, and did not assume any obligation under it, and that the depositions on file did not show any genuine issue of fact as to their having induced the contract's breach. The court made no findings of fact, and did not indicate the grounds of its ruling except to say that there was no covenant here which ran with the land; and, if there were, it might, and in all probability would, be in violation of the anti-trust laws of Texas; which, he said, he did not think entered into this matter at all. As to the breach or inducement to breach, he said: "I find nothing of that sort disclosed here whatever." (Tr. 767.)

In our opinion, neither a sale nor lease of the three block plants, nor an assignment of the contract, by the buyers could in law effectuate a release of their obligations under the contract without the consent of appellant. The written agreement shows on its face that the requirements of the three block plants were the subject matter of the sale, and were within the contemplation of the parties. The plants have not been sold; they have not been shut down; they have not been dismantled; they have never ceased to operate and to have requirements. They are operating under a lease from the Browns, who signed the contract and who are still very much interested as individuals in the operation of the plants. Much of the value of the rights reserved to the lessor under the lease depends upon the continuing operation of the plants.

In these circumstances, the law of Texas imposes an implied obligation upon the buyers to keep the plants in operation lest, by disposing of them or shutting them down, the buyers be permitted to destroy the subject matter of the contract, the requirements of the plants, in violation of the intention of the parties that sales and purchases under it would continue for the full term thereof. This rule was recognized in a decision of the Supreme Court of Texas in 1951, Portland Gasoline Co. v. Superior Marketing Co., Inc., 150 Tex. 533, 243 S.W.2d 823, 825, wherein was cited Williston on Contracts, Rev.Ed., Vol. 1, pp. 357–358, which refers to a class of cases that finds from the business situation, from the conduct of the parties, and from the startlingly disproportionate burden cast upon one of them, a promise implied in fact by the seller to continue in good faith sales or production, or on the part of the buyer to maintain his business or plant as a going concern, and to take its bona fide requirements. " 'In other words, this view implies an obligation to carry out the

contract in the way anticipated, and not for purposes of speculation to the injury of the other party' ".

In Wells v. Alexandre, 130 N.Y. 642, 29 N.E. 142, 15 L.R.A. 218, the court held that the sale of steamers after making a contract for the supply of coal to them for one year did not relieve the original owners from the obligation to take the coal that the ordinary and accustomed use of the steamers required. In Great Lakes & St. Lawrence Transportation Co. v. Scranton Coal Co., 7 Cir., 239 F. 603, the court held that the contract carried with it an implied obligation on the part of the defendant to continue its business during the term of the contract and run its boats in a reasonable manner. In 1924, in an opinion by Judge Walker, where the owners of timberland and lumber mills had contracted with the plaintiffs to sell to them all of their output of lumber, the Fifth Circuit held that, although the contract contained no covenant by defendants not to sell their entire lumber operation, the contract was nevertheless enforceable by the plaintiff, and damages were recoverable. Kamm v. Pritchard, 296 F. 871.

See also Diamond Alkali Co. v. P. C. Tomson & Co., Inc., 3 Cir., 35 F.2d 117; Central States Power & Light Corp. v. United States Zinc Co., 10 Cir., 60 F.2d 832, certiorari denied 287 U.S. 660, 53 S.Ct. 123, 77 L.Ed. 570; Dawson Cotton Oil Co. v. Kenan, McKay & Speir, 21 Ga. App. 688, 94 S.E. 1037; Wigand v. Bachmann-Bechtel Brewing Co., 222 N.Y. 272, 118 N.E. 618.

█ Further support for our conclusion is found in the provisions of paragraph 13 of the contract reading as follows:

"13. Nothing in this agreement contained shall prevent any party hereto from consolidating or merging its operation into another operation, or from changing the form of organization, or from selling, conveying, or exchanging its property as an entirety or substantially as an entirety, but any and all such mergers, consolidations, organizational changes, sales, conveyances, or exchanges shall be binding upon the organization resulting from or succeeding to the ownership of the property as an entirety or substantially as an entirety, to the intent that the terms and provisions of this contract shall inure to the benefit of and be binding upon the parties hereto, and upon the heirs, executors, administrators, successors and assigns of each party hereto."

The provisions of this paragraph, on which these appellees rely as reasons for terminating their contract, strengthen our conclusion that they were not released from but remained obligated under it. It makes clear, we think, that the contracting parties took pains to anticipate and provide against contingencies such as are now being put forward as reasons for terminating the contract.

█ Turning now to the second group of appellees, who leased and operated the plants while 44 months of the contract remained, the depositions show a genuine issue as to the fact that all of the appellees became equal participants in the breach of the contract, and that the second group became liable as having induced the breach. Finally, we hold that the contract is valid under the anti-trust laws of Texas.

The judgment appealed from is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.