EDWARD F. THIELER, Appellant, v. TRINITY ADVERTISING CORPORATION, Respondent.

First Department, April 13, 1934.

*R. D. Murray* of counsel [*Preston Staley* with him on the brief; *Murray, Hollaman & Lockwood*, attorneys], for the appellant.

*Inzer B. Wyatt* of counsel [*Sullivan & Cromwell*, attorneys], for the respondent.

O'MALLEY, J. The judgment appealed from dismissed plaintiff's complaint upon the merits upon the ground that the proof failed

to establish an enforcible contract. In our view this disposition was erroneous, and a reversal is required.

Plaintiff's cause of action is predicated upon a contract made with the defendant on January 13, 1931, as modified by a writing made August fourth of the same year.

Plaintiff is in the advertising business and specializes in lithographic material for window and store displays. He submitted to the defendant certain Clipper Ship festoon sketches. A festoon is a lithographic advertising display designed to be hung above " the mirror on a back bar soda fountain." His evidence showed his sketch in final form was accepted orally by defendant's representative, Hustace, who told him that at least 25,000 would be required and that he might want 50,000 if the defendant's plant managers would care to take the larger amount. The festoon sketch at the time was returned to the plaintiff and he was directed to proceed to have engravings immediately made on stone, as deliveries would be needed in March or the early spring of 1931. Proofs were to be ready by February fifteenth. Plaintiff was also directed to " prepare prices on 25,000 and 50,000."

Pursuant to this oral understanding, the plaintiff submitted to the defendant a writing dated January 13, 1931, referred to in the record as Exhibit 1. This contained specifications and quotations on 25,000 festoons of certain dimensions and description " design for which was submitted and O K'd by you." It recited that proof would be submitted by February fifteenth; also a price based on a quantity of 25,000 and terms of payment.

On behalf of the defendant, Hustace denied having agreed orally to take any festoons whatever. His testimony was to the effect that whether any orders would be placed would depend upon the needs of the defendant's plant. It is further contended that Exhibit 1 constituted a mere offer from the plaintiff which was never accepted by the defendant. We are of opinion, however, that the evidence was sufficient to require a finding that the defendant deemed itself bound to a contract.

After writing the letter of January thirteenth, the plaintiff made a contract with the United States Printing and Lithograph Company to manufacture at least 27,000 festoons. His evidence showed that the proof made by the lithograph company was submitted to Hustace by February fifteenth and approved. The plaintiff thereafter sought to secure delivery instructions but was put off for various reasons, among others, that the defendant had not succeeded in getting " definite orders for quantities from their different plant managers."

Subsequently, and in May, 1931, the plaintiff complained to the

defendant about the financial burden he had to assume under his contract and the amount of money he had advanced to the manufacturer and requested defendant to ease his burden by "giving me some money on account." Later, and on July 7, 1931, he made application to the defendant in writing. He referred to the interruption in defendant's advertising plans which would delay delivery of the festoons until possibly "early next spring" and plaintiff's desire to co-operate until defendant could use the material. He further stated that after the defendant had approved the finished sketch the plaintiff proceeded to have the engravings and proof finished immediately as the defendant had impressed upon him that it "would want delivery as soon as possible." He referred to the expense incurred by the lithographers and continued: "We do not want to ask you to cover all these costs with a preliminary payment on account but if you would let us have $4,000 or $5,000 on account with the understanding that the U. S. Printing Company with whom I had contracted for these displays will guarantee delivery of your order when you are ready to have shipments made, subject of course to this preliminary payment, I would appreciate it very much and it would be a great help to me in carrying the deliveries over until next March.

"You may be assured also that in the event that the original quantity which you estimated to be at least 25,000 and on which our quotation to you was based, is to be changed, I will adjust my price with the cooperation of the U. S. Printing Company on any quantity you may later decide to use.

"I hope I make it clear that any payment that you make on account will be applied against first shipments and that the performance of my part of the contract when you are ready for delivery will be guaranteed by the U. S. Printing Company."

Plaintiff's proposition was not satisfactory to the defendant and he was requested to submit it in modified form. As a result and on August 4, 1931, the plaintiff submitted a writing prepared by the attorneys for the defendant and signed by plaintiff, the lithograph company, and the defendant. It is this writing which plaintiff treats as a modification of his original contract. Its material portions read: "In consideration of your payment to the undersigned Edward F. Thieler, of $1,750, and to the undersigned The United States Printing & Lithograph Company, of $750, in connection with work already done in preparing for the manufacture of advertising festoons in accordance with the provisions of *your contract* with Edward F. Thieler, the terms of which are set forth in his letter addressed to National Dairy Products Co. dated January 13, 1931 (a copy of which is attached), The United States

Printing & Lithograph Company hereby agrees to assume the full performance of all of the obligations of Edward F. Thieler under *said contract* in the event of any failure whatever to perform on his part and Edward F. Thieler agrees in such event to the substitution for him under *said contract* of The United States Printing & Lithograph Company." (Italics ours.)

The agreement further provided that " delivery of the festoons has been indefinitely postponed," and further bound both parties in the meantime " neither to use nor permit to be used any of the art work, plates or dies already prepared, nor any copy or adaptation thereof, in connection with work done for any other person, firm or corporation."

It further provided that in the event the defendant ordered less than 25,000 festoons at a price of forty-two cents per set of five pieces quoted in plaintiff's letter of January 13, 1931, there should be an adjustment of price as follows:

" 49¢ per set for from 20,000 to 25,000 sets
" 59¢ per set for from 15,000 to 20,000 sets
" 79¢ per set for from 10,000 to 15,000 sets."

The writing further provided that the $2,500 advanced was to be applied until exhausted as payment for festoons as delivered under the contract in accordance with the defendant's directions, whether or not performance was to be assumed by the United States Printing and Lithograph Company.

It is to be observed that a copy of plaintiff's letter of January 13, 1931, was attached to and made a part of the agreement of August 4, 1931, and that in the latter the letter of January thirteenth was referred to and treated as plaintiff's contract with the defendant.

We are of opinion, therefore, that when the writings of January thirteenth, July seventh and August fourth are considered and read together, there is a firm and valid binding contract between the parties. Whether the letter of January thirteenth was a mere offer which was never accepted, the writing of August fourth, to which the earlier communication was attached, clearly contained all the essentials of a contract. (*Wood* v. *Duff-Gordon*, 222 N. Y. 88.) This latter writing was prepared by the defendant's attorney and any uncertainty or ambiguity therein is to be resolved against the defendant. (*Gillet* v. *Bank of America*, 160 N. Y. 549, 554; *Moran* v. *Standard Oil Co.*, 211 id. 187, 196.) The contract should not be construed as a mere firm option to which the defendant was bound at its election and which plaintiff was fully obligated to perform. (*Wigand* v. *Bachmann-Bechtel Brewing Co.*, 222 N. Y. 272, 278.) Defendant's later refusal to accept delivery of at least 10,000 festoons as required by the modification of the original

agreement constituted a breach of its obligation for which the plaintiff was entitled to the amount of damages which he proved he sustained.

The judgment, therefore, should be reversed, with costs, and judgment for the plaintiff in the sum of $3,432.60 directed, with interest and costs.

FINCH, P. J., MARTIN, TOWNLEY and GLENNON, JJ., concur.

Judgment reversed, with costs, and judgment directed in favor of the plaintiff in the sum of $3,432.60, with interest and costs.