SAMUEL HAMMER et al., Appellants, *v.* WALTER G. SCHELKER, Respondent. WALTER G. SCHELKER, Defendant and Interpleading Plaintiff-Respondent, *v.* GRANT COLE ENTERPRISES, INC., Interpleaded Defendant-Respondent.

First Department, December 20, 1966.

*Robert MacCrate* of counsel (*Jacob Lippman, Martin Bressler, John L. Warden* and *Thomas E. Patton* with him on the brief; *Sullivan & Cromwell* and *Charles Gadd,* attorneys; *Milton Gould* of counsel), for appellants.

*Harry Salvan* for interpleaded defendant-respondent.

*Per Curiam.* Plaintiffs at one time were the owners of all the stock of United Metal Cabinet Corporation (herein United). In December, 1960 they sold 726 shares, 15% of the issued stock, pursuant to a written agreement. Defendant Grant Cole Enterprises, Inc., is now the owner of this block of stock. By the terms of the 1960 sale agreement plaintiffs were given the right to sell all of the stock of United, including defendant's shares, provided they afforded defendant the opportunity to first meet the terms of the offer to plaintiffs. The precise provisions of the agreement were that upon receipt of a bona fide offer plaintiffs were to give notice in writing of the price and terms of the offer. The agreement then provides: "Thereafter we shall have the right for twenty (20) days to purchase your shares (but not less than all of your shares) of the said capital stock for cash and at the price, prorated, contained in the said bona fide offer. If we shall not complete the purchase of your said shares of capital stock as aforesaid within the said twenty (20) day period, you may then sell all of the shares of the capital stock of United, including the said seven hundred twenty-six (726) shares purchased by us hereunder". The agreement further provides for the receipt by defendant of its proportionate share of the purchase price, and for the delivery of the stock to plaintiffs by the defendant Schelker, who was named in the agreement as custodian of the stock.

Plaintiffs received a bona fide offer to purchase all the stock of United from Colonial Products Company of Pennsylvania (herein Colonial) and gave notice of such offer to defendants on February 10, 1966. The offer of Colonial was on the following terms: At the closing Colonial would pay $75,000; within 90 days, or a later date if agreed upon, it would pay an amount equal to 65% of the net tangible assets of United less $75,000 (the value of the net tangible assets to be determined initially by S. D. Leidesdorf & Company, Colonial's accountants; this determination being subject to challenge by plaintiffs in respect to any item, and any dispute arising therefrom to be resolved by Price Waterhouse & Co.); and one year after the payment of the 65% above provided for, Colonial would pay 10% of the value of these assets. Stated as a further consideration, Colonial agreed to cause a loan to be made to United of $1,000,000 at the

closing, which sum was to be used to pay United's creditors, any balance remaining to be used as working capital.

Defendant did not meet these terms and also refused to release its stock. Plaintiffs then brought this action to replevy the stock. On defendant's application Special Term granted a cross motion for summary judgment dismissing the complaint.

We believe this disposition to be correct. Defendant's obligation was to meet the terms of the offer or surrender its stock and receive 15%, its proportionate share of the sale price. Inherent in the obligation was the condition that the terms agreed upon between the buyer and seller were such as could be met within the restrictions of defendant's agreement with plaintiffs. Specifically these restrictions were payment in cash within 20 days of the receipt of notice of the proposed sale. Patently, regardless of what credit plaintiffs might be willing to extend to Colonial or any other proposed buyer, they contracted that defendant was to be limited to 20 days within which defendant was to pay the purchase price in cash. This was impossible. The purchase price to be paid by Colonial was not known within 20 days, and in fact had not been determined when the action was brought. There was no way in which defendant could make a cash payment equal to Colonial's offer in the time allowed to defendant. Clearly plaintiffs could have rejected a tender by defendant of $75,000 and defendant's agreement to pay 65% of the value of the assets as determined by the accountants at some future date. Such an offer would not constitute a payment in cash.

Plaintiffs' argument that the sale of a corporation engaged in extended commercial operations would necessarily involve some procedure for fixing the price of assets, and hence was implied in the conditions of the original sale of the minority interest, does not affect the problem. Even if the terms of that last-mentioned agreement are read in that light, no method is suggested as to how defendant could have exercised its option to purchase plaintiffs' stock in compliance with the 1960 agreement.

The subsidiary questions of whether the defendant, to meet the terms of Colonial's offer, would be obliged to use the accountant named in Colonial's purchase agreement, and whether the agreement to procure a loan was an item of the purchase price, are not reached.

The order should be affirmed on the law, with costs and disbursements to respondents.

STEVENS, J. (dissenting). It should be recognized that because of pragmatic economic considerations, straight cash sales of rela-

tively small manufacturing enterprises are not usually made or generally contemplated. The offer was reasonably definite and its terms could have been reasonably met. *Id certum est quod certum reddi potest.* That is certain which may be rendered certain. (*Wells* v. *Alexandre,* 130 N. Y. 642, 645; *Castelli* v. *Tolibia,* 83 N. Y. S. 2d 554, affd. 276 App. Div. 1066; 1 Williston, Contracts [3d ed.], § 47; 9 N. Y. Jur., Contracts, p. 578, § 47.) Had the respondents been so disposed they could have met the terms of the offer. They chose to do nothing. It cannot be said therefore as a matter of law that the bona fide offer for the purchase of the majority stock was not such an offer as was contemplated in the option agreement of 1960. Even if this approach be rejected, at the very least, an ambiguity exists as to what the parties actually bargained for which requires a trial. I would therefore reverse and deny the motion for summary judgment.

BREITEL, McNALLY and STEUER, JJ., concur in *Per Curiam* opinion; STEVENS, J., dissents in opinion, in which BOTEIN, P. J., concurs.

Order, entered on May 18, 1966, so far as appealed from, affirmed, on the law, with $50 costs and disbursements to the interpleaded defendant-respondent.